OPINION
{¶ 1} Appellant, Bryce A. Schill, appeals from a final judgment of the Geauga County Court of Common Pleas, granting the parties a divorce; granting permanent custody of Christian Schill ("Christian"), the minor child of the parties, to appellee, Michelle M. Schill; and ordering Christian be treated by a mutually-selected mental health professional. For the reasons set forth below, we affirm the judgment in part, reverse the judgment in part, and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} The following procedural events and substantive facts evident in the record are relevant to our review. The parties were married in June 1996, and Christian Schill was born April 21, 1998 as issue of the marriage. Appellee had a child, John Stanton ("John"), from a previous marriage.[1] On August 3, 2000, appellee left the marital home with Christian and John. Appellant filed a complaint for divorce on August 4, 2000. Appellee filed a timely answer and counterclaim for divorce, and appellant timely answered the counterclaim. Both parties initially requested temporary and permanent custody of Christian, but appellee later requested shared parenting. On consideration of appellant's ex parte motion, he was granted emergency temporary custody of Christian on August 4, 2000. No parenting time was granted to appellee.
 {¶ 3} The parties entered into an agreement on September 29, 2000 that provided appellee with visitation for twelve hours every weekend, alternating Saturdays and Sundays. This agreement was incorporated into an order, dated October 2, 2000, granting appellant temporary custody of Christian.
 {¶ 4} The trial court appointed Dr. Stephen Neuhaus ("Neuhaus") to complete a psychological evaluation of the parties regarding the allocation of parental rights and responsibilities. Appellant provided Neuhaus with a list of providers and suggested Neuhaus examine these records as relevant to appellee's mental history, as appellant told Neuhaus that appellee had a history of depression, had attempted suicide on at least six prior occasions, and was diagnosed three times with borderline personality disorder. Neuhaus' testimony at trial corroborates appellant's allegations and reveals that appellee has been diagnosed with borderline personality disorder and major depressive disorder with suicidal features.
 {¶ 5} In Neuhaus' report, dated February 9, 2001, he recommended appellant's household remain the primary residence of Christian, but Neuhaus also believed Christian should have increased visitation levels with appellee and his step-brother, John. Pursuant to Neuhaus' recommendation, appellee moved to modify the visitation schedule to adopt the schedule recommended by Neuhaus. The magistrate's decision and the interim order, both dated July 27, 2001, required that appellee have a minimum of two weeks summer parenting time with Christian, visitation consistent with the Geauga County Standard Visitation guidelines (including alternate weekends beginning Friday at 6:00 p.m. and ending Sunday at 6:00 p.m.), and visitation Thursdays from 5:30 p.m. to 8:00 p.m. An order adopting this visitation schedule was entered on September 5, 2001.
 {¶ 6} The following relevant events occurred in violation of the interim order. Appellant denied visitation to appellee for the weekend beginning August 3, 2001, later arguing that he was in fear for his son's safety based on information from Dr. Deborah Baum ("Baum"), a clinical psychologist. Baum had been treating Christian, and on July 21, 2001, she related information in writing to appellant and to Geauga County Childrens' Services that she believed Christian was at risk of extreme distress/fear and of sexual misconduct while on visitation with appellee. Baum stated, "I suspect that harmful verbal statements are being made [to Christian] that create extreme distress/at times fear [sic] and I am concerned that he is at risk for sexual misconduct while on visitation."[2]
 {¶ 7} The magistrate conducted a contempt hearing. A transcript of the hearing was not made part of the record, but it appears that the magistrate heard testimony from the parties and Baum. The magistrate, in her August 30, 2001 decision, found that no evidence was presented regarding the sexual misconduct Baum referenced in her July 21, 2001 correspondence. The magistrate found that after receiving the information from Baum, appellant permitted appellee visitation with Christian on Thursday, August 2, 2001 but denied visitation to appellee on Friday, August 3, 2001. The magistrate also found Baum less than credible, the abuse allegations and appellant's concerns about Christian's safety unsubstantiated, and held appellant in contempt for refusing to permit appellee visitation with Christian. Appellant was sentenced to five days in the Geauga County Safety Center, but this sentence could be suspended provided he immediately arranged makeup visitation.
 {¶ 8} No objections to the magistrate's decision were filed. The trial court stated in its September 24, 2001 judgment entry that it reviewed the magistrate's decision, independently analyzed the legal issues, and approved and adopted the magistrate's decision. The trial court held appellant guilty of contempt and sentenced him to five days in the Geauga County Safety Center. Appellant was permitted to purge himself of this contempt as outlined by the magistrate. According to the judgment entry, if appellant failed to purge himself, appellee could file a motion to impose the jail sentence. Appellant has indicated in his appellate brief that he did purge himself, and appellee has not disputed this. Thus, we will treat the trial court's September 24, 2001 judgment entry as a final appealable order.
 {¶ 9} On November 5, 2001, appellee moved to adopt a shared parenting plan whereby each parent would be residential parent and legal custodian of the child.
 {¶ 10} In addition to visitation, much of the procedure of this case involved discovery disputes. On March 23, 2001, appellant filed a motion requesting medical records which he argued were necessary to appropriately cross-examine Neuhaus and to assess the mental health of appellee for purposes of child visitation and custody. Specifically, appellant requested medical records from January 1, 1996 onward that pertained to eighteen providers, including social workers, psychologists/psychiatrists, and hospitals. Appellant claims to have requested records from providers who treated John relating to an alleged suicide attempt and hospitalization. It is not evident from appellant's request which providers treated appellee and which providers treated John.
 {¶ 11} Appellee opposed the motion arguing that privilege precluded the release of the records. Not only did she argue that her own privilege precluded the release of the records, but appellee also raised John's privilege. Appellee stated that some of the records requested pertained to communications between a psychologist and a licensed school psychologist and were thus privileged.
 {¶ 12} The magistrate granted appellant's request for records. According to the magistrate, R.C. 3109.04(F)(1)(e) requires the court, in determining the best interests of a child, to consider all relevant factors, including the mental and physical health of all the parties and any other factor in the best interest of the child. Further, the magistrate cited R.C.3109.051(D)(9), stating the court shall use as one of the factors the mental health of all parties concerned, and because both parties have put their mental health at issue by requesting custody, they waive privilege as to their own medical and mental health records. Consequently, the magistrate found limited waiver as to issues relevant to the allocation of parental rights and responsibilities and also determined that the records were confidential. The magistrate ordered records to be delivered to the court for an in camera inspection and permitted appellant to inspect the records at the courthouse. Appellant was not permitted to copy the records.
 {¶ 13} Limited records were provided to the court, including those from Nancy Winkelman (appellee's social worker), Laurelwood/Mt. Sinai Hospital, and University/Geauga Hospital. On November 7, 2001, appellant moved for appellee to show cause why she should not be held in contempt for failing to abide by the magistrate's order requiring her to produce medical records to the courthouse. Appellant argued that most of the records were not forthcoming, and trial was set for December 7, 2001.
 {¶ 14} In response, the magistrate ordered, on November 15, 2001, that appellant was entitled to medical records from the following providers: Dr. Robert E. Battisti, Dr. Nancy Davis, Dr. Elizabeth B. Hill, Dr. Richard Hill, Hillcrest Hospital, Dr. Brittain M. Justen, Ravenwood Mental Health Center, Dr. Farid Sabet ("Sabet"), and Mark J. Warren. Appellee was ordered to immediately sign releases entitling appellant or his attorney to obtain these records directly.
 {¶ 15} Again, nothing in the record reveals whether these providers treated appellee or treated John. However, appellee objected to this ruling on the grounds that some of the records ordered to be produced pertained to her son John and were privileged. This objection, however, was untimely. No additional records were forthcoming.
 {¶ 16} Appellant moved on November 30, 2001 to continue the trial which was set for December 7, 2001, arguing that he had been materially deprived of appropriate discovery by appellee's failure to produce medical records as ordered by the magistrate. Appellant stated in his motion that he had done nothing to create the situation and that appellee had not reported any difficulties in obtaining the records. Appellant argued he would not be able to get a fair trial without the records. The magistrate denied the motion without stating any rationale in her December 5, 2001 order.
 {¶ 17} The matter was tried before the magistrate on December 7, 2001 and on December 14, 2001. The issues addressed included the divorce and property settlement, appellee's motion for shared parenting, and the award of attorney's fees in connection with the judgment against appellant for contempt. Each party testified on its own behalf. Hazel Schill, appellant's mother, testified on behalf of appellant, and Neuhaus and Winkleman testified on behalf of appellee.
 {¶ 18} During trial, Neuhaus testified contrary to his February 2001 report in which he suggested appellant have residential custody of Christian. Neuhaus did not file an amended report, and appellant did not object to Neuhaus' testimony being contrary to his February 2001 recommendation.
 {¶ 19} Appellee's counsel questioned Neuhaus, asking him to assume certain facts and make a hypothetical recommendation based upon those facts. Appellee's counsel asked Neuhaus to assume that appellant had changed Christian's pediatrician without the knowledge of appellee; that appellant testified that the primary cause for Christian acting out is due to the time Christian spends with appellee; that Baum is Christian's therapist and has no contact with appellee; and that appellant testified that the child was acting out daily, sometimes uncontrollably, even at times when he had not seen his mother in twelve days.
 {¶ 20} Based upon these assumptions, Neuhaus testified that it would be in Christian's best interest that appellee be named primary residential custodian. Neuhaus testified that he changed his recommendation in response to information he received since drafting his February 2001 report. Neuhaus further stated that he was an "optimist" and a "blinded dreamer" when previously recommending shared parenting, with Christian primarily residing with his father, and believing such a plan would work.
 {¶ 21} Neuhaus further testified that appellee's medical records revealed that she was diagnosed with major depressive disorder with suicidal features and also with borderline personality disorder, which he stated often manifests itself as self-mutilation. Upon cross-examination, Neuhaus admitted he did not examine the records from appellee's diagnosis of borderline personality disorder, any records from Sabet (appellee's treating psychiatrist) or from Winkelman (appellee's social worker). He said he did speak with someone from Winkelman's office.
 {¶ 22} Neuhaus further admitted that he did not review any records of appellee prior to December 1999, when appellee was hospitalized for suicidal ideation.[3] Appellee testified at trial that she also attempted suicide in March 1999. Therefore, Neuhaus did not review any records pertaining to appellee's March 1999 suicide attempt, relating to the other four suicide attempts appellant alleges occurred, or from the providers who initially diagnosed appellee with borderline personality disorder and severe depression with suicidal features.
 {¶ 23} Although he did not review these records, Neuhaus testified that he was "comfortable" with his decision because the records he did review referenced the prior records. Neuhaus also stated, "I would never say that there isn't something else out there that might [change my decision] ultimately * * *. I still rendered an opinion that was with a reasonable degree of psychological scientific certainty I could live with."
 {¶ 24} The magistrate issued her decision on March 5, 2002. According to the decision, the parties should be granted a divorce on the grounds of incompatibility, appellee should be designated residential parent and legal custodian of Christian, and appellant should visit and have parenting time according to the Geauga County Standard Visitation Guidelines unless the parties otherwise agree.
 {¶ 25} Appellant filed timely objections to the magistrate's decision. These objections essentially reflected the issues outlined in appellant's first and fifth assignments of error. The objections did not reflect the issues outlined by appellant's other assignments of error because the circumstances giving rise to those assignments do not stem from the magistrate's report and only occurred afterwards.[4] The magistrate did not respond to appellant's objections.
 {¶ 26} Appellee was to have visitation with Christian on weekends, commencing Friday, March 8, 2002, the weekend that followed the magistrate's decision. Nobody was present when appellee went to appellant's home to pick up Christian, and appellee had not received prior notification from appellant about any need to cancel visitation. Appellant was held in contempt on March 22, 2002 and sentenced to seven days in the Geauga County Jail to commence on March 26, 2002, at 8:30 a.m. Further, appellee was designated as residential parent and legal custodian of Christian, and parties were ordered to submit a proposed visitation/parenting plan. Appellant timely moved to suspend the bond requirement, stating he intended to appeal the result of the contempt hearing. His motion was granted.[5]
 {¶ 27} On March 19, 2002, seventeen days after the trial, the trial court appointed on the court's own motion a guardian ad litem for Christian. The guardian was entitled to complete access to all school, medical, psychiatric, and psychological records of Christian and to interview Christian without his parents present. The guardian was not explicitly ordered to provide a written report, but the judgment entry stated that the guardian shall only disclose the information to report to the court or as the court permits. Nothing in the record indicates the trial court conducted a hearing or that the parties had the opportunity to cross-examine the guardian. The record reveals the guardian communicated via telephone with the trial judge, ex parte, on April 15, 2002 and April 29, 2002.
 {¶ 28} The trial court entered judgment on July 23, 2002, confirming the decision of the magistrate. Relevant to the instant matter, the trial court ordered the marriage of the parties dissolved, designated appellee the residential parent and legal custodian of Christian, and granted appellant parenting time according to the Geauga County Standard Visitation Guidelines. Further, the trial court ordered the parties to mutually select a psychiatrist, psychologist or other mental health professional to provide counseling and treatment for Christian.[6]
 {¶ 29} From this decision, appellant filed a timely notice of appeal with this court and submitted the following assignments of error for our consideration:
 {¶ 30} "[1.] The trial court erred to the prejudice of plaintiff by confirming the magistrate's decision where the record was replete with incorrect rulings on discovery, evidence, trial management, and credibility.
 {¶ 31} "[2.] The trial court erred to the prejudice of the plaintiff-appellant during its post magistrate decision period by appointing a guardian ad litem to conduct interviews of the parties, convey information to the court without any notice or safeguard of cross-examination by the plaintiff's counsel or by requiring a report.
 {¶ 32} "[3.] The trial court erred to the prejudice of the plaintiff-appellant and exceeded its authority when it ordered plaintiff's compliance with an unnamed psychologist.
 {¶ 33} "[4.] The trial court erred to the prejudice of plaintiff-appellant when it held plaintiff in contempt of court where plaintiff had reasonable cause to suspect abuse of child.
 {¶ 34} "[5.] The trial court erred in affirming the magistrate's decision for the reason that it is against the manifest weight of the evidence."
 {¶ 35} These assignments of error relate to proceedings during the divorce and custody determinations in this case. An appellate court reviews a trial court's decision in granting custody under the abuse of discretion standard, and the first four assignments of error must be examined under this standard. When applying the abuse of discretion standard, the appellate court is not free to merely substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161. An abuse of discretion is more than an error of law or of judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 36} We will address the merits of appellant's first four assignments of error. Under the first assignment of error, appellant argues that the trial court erred by confirming the magistrate's report, as he contends the magistrate made incorrect rulings on discovery, evidence, and the credibility of witnesses.
 {¶ 37} Our careful review of the record reveals the magistrate abused her discretion by failing to grant a continuance in light of appellee's repeated refusal to provide discovery. However, the magistrate did not err by failing to order appellee to sign releases and cause production of the John's medical and/or mental health records. Accordingly, appellant's first assignment of error has merit to the limited extent indicated.
 {¶ 38} "The grant or denial of a continuance is a matter which is entrusted to the broad sound discretion of the trial judge * * *," and it can only be reversed when there existed an abuse of discretion. State v. Unger (1981), 67 Ohio St.2d 65,67. There are no mechanical tests to determine whether a continuance should be granted, and the facts of every case are determinative.
 {¶ 39} "In evaluating a motion for a continuance, a court should note * * *: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance, which gives rise to the request for the continuance; and other relevant factors, depending on the unique facts of the case." Id. at 67-68. The trial court must weigh all the compelling considerations and apply a balancing test.
 {¶ 40} In the instant case, on March 23, 2001, appellant requested medical records from January 1, 1996 onward, from eighteen providers. Despite appellee's opposition on the grounds of privilege, on August 14, 2001, appellee was ordered by the magistrate to sign the releases and to cause delivery of the requested medical records to the courthouse. Months later, in November 2001, the records were still not produced, and appellant moved for appellee to show cause why she should not be held in contempt. On November 15, 2001, the magistrate ordered appellee to immediately sign releases, this time enabling appellant to obtain these records directly. Although appellee had violated the magistrate's order twice, the magistrate did not hold appellee in contempt and actually, in her November 15, 2001 order, made no reference at all to appellant's motion for appellee to show cause why appellee should not be held in contempt.
 {¶ 41} Due to appellee's failure to produce these records, appellant requested a continuance, but the magistrate denied the motion without stating any rationale. However, at trial, the magistrate stated she looked to the two past continuances in making its decision to deny this continuance. The first continuance was granted because appellant had received Neuhaus' report four days before trial, and appellant would not have time to thoroughly review the report before trial. The second continuance was granted because appellant's counsel had another trial scheduled on the trial date, and the magistrate believed another continuance would unduly delay trial. The magistrate further added that "to the extent" the records were produced, appellant could reopen the evidentiary portion of the trial at a later date. This statement itself indicates the magistrate's unwillingness to enforce the order requiring appellee to produce the requested records and the magistrate's failure to appreciate appellee's role in preventing appellant access to these records and the necessity of these medical records to the instant case.
 {¶ 42} The magistrate's rationale is unfounded. A continuance is the appropriate method to avoid prejudice in a scenario such as this. "If a party fails to comply with the requirements of discovery, the court may order the party to permit discovery [or] grant a continuance * * *. A continuance * * * is a favored method to avoid prejudice which may flow from a failure to provide discovery * * *" while ensuring a fair trial. State v.Parks (1990), 69 Ohio App.3d 150, 156.
 {¶ 43} Both parties have put their mental health in issue, and appellant's inability to access these medical records was extremely prejudicial, preventing him from assessing appellee's mental health and appropriately cross-examining appellee and Neuhaus. Accordingly, the magistrate abused her discretion by failing to grant a continuance in light of the above facts.
 {¶ 44} However, the magistrate did not err by failing to order appellee to sign releases and cause production of John's medical and/or mental health records. Absent an affirmative showing and direct link between John's medical and mental health and Christian's best interest, we are not free to presume appellee waived privilege to John's records by simply requesting custody of Christian. In this instance, the record belies appellant's contentions that John has sexually and/or physically abused Christian, and no direct link between John's health and Christian's best interest is thus evident. The magistrate, therefore, did not err by failing to order production of John's records.
 {¶ 45} In determining the best interests of a child, R.C.3109.04(F)(1)(e) requires a trial court to consider all relevant factors, including the mental and physical health of all the parties and any other factor in the best interest of the child. Absent express consent or a waiver, however, a trial court may not consider privileged communications in determining the best interests of a child nor may a court order records produced that contain privileged communications. Privileged communications include those between a patient and his physician, licensed psychologist, and/or school psychologist. See, e.g., R.C. 2317.02
and R.C. 4732.19.
 {¶ 46} The filing of any civil action by a patient, or a patient's legal representative, waives privilege as to any privileged communication that relates to an issue in the civil action. R.C. 2317.02(B)(1)(a)(iii). It appears from the record in this matter that appellee has sole residential custody and decision-making authority over John. As such, appellee had the authority to waive privilege to John's medical records.
 {¶ 47} "Whenever custody of children is in dispute, the party seeking custodial authority subjects him or herself to extensive investigation of all factors relevant to the permanent custody award. Of major importance * * * is the mental and physical health of not only the child but also the parents." (Emphasis added.) Gill v. Gill, 8th Dist. No. 81463, 2003-Ohio-180, at ¶ 18. Thus, appellee waived privilege as to her own medical and mental health records by requesting custody of Christian.
 {¶ 48} However, appellee did not necessarily waive privilege as to John's records by requesting custody of Christian. Certainly, John's health is relevant to Christian's best interest because John would be a member of the household and an influence on Christian if appellee were to be designated as residential parent and legal custodian of Christian. However, it does not necessarily extend from this minimal relevance that appellee waived privilege as to John's medical records simply by requesting custody of Christian. To effectuate a waiver, the record must demonstrate some direct causal relationship between John's medical or mental health and Christian's best interest.
 {¶ 49} Appellant argues that John has mental health issues, John has attempted suicide in the past, and John has sexually and/or physically abused Christian. Thus, according to appellant, the magistrate erred by refusing to order production of John's medical and mental health records.
 {¶ 50} The record, however, provides no factual support for appellant's contention that John has sexually or physically abused Christian. Before issuing his February 2001 report, Neuhaus interviewed both children and observed them interacting. Neuhaus' report suggests that Christian and John have a typical brotherly relationship, and Christian enjoys spending time with John and looks forward to doing so. Further, although a transcript of the first contempt hearing has not been made a part of the record, the magistrate's decision and findings indicate that no evidence or testimony was presented at that hearing regarding the sexual misconduct Baum referenced in her July 21, 2001 correspondence to appellant.
 {¶ 51} Thus, although John would be a member of the household and an influence over Christian if appellee were to be designated as residential parent and legal custodian of Christian, such relevance alone does not rise to a level sufficient to justify such invasive discovery. Something more than appellant's unsupported suspicions must be shown, and the record fails to demonstrate such evidence. Accordingly, the trial court did not err by failing to order appellee to sign releases and to cause production of John's medical and/or mental health records.
 {¶ 52} We note that the magistrate did not abuse her discretion as to the other issues appellant alleges under his first assignment of error, including those issues relating to credibility of witnesses. Trial courts are granted broad discretion. An appellate court cannot substitute its judgment for that of the trial court, and the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness. Davis v. Flickinger (1997), 77 Ohio St.3d 415,418. Further, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses * * *. A finding of error of law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id. at 419.
 {¶ 53} Moreover, "[t]his is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." (Emphasis sic.) Id. at 418. See, also, Trickey v.Trickey (1952), 158 Ohio St. 9. Therefore, the remaining issues appellant raises under this first assignment of error regarding the magistrate's findings of credibility and other facts are without merit.
 {¶ 54} Accordingly, the magistrate abused her discretion by failing to order a continuance in this matter, and thus the trial court erred by adopting the magistrate's decision. However, the magistrate did not err by failing to order production of John's medical and/or mental health records. Appellant's first assignment of error has merit to the limited extent indicated.
 {¶ 55} Under the second assignment of error, appellant argues that the trial court erred by appointing a guardian ad litem to interview the parties and Christian, failing to require the guardian to write a report, and failing to conduct a hearing permitting appellant to cross-examine the guardian. A guardian's report does not appear in the record, and the record is also void of any evidence demonstrating that a hearing was conducted in which parties were able to cross-examine the guardian. As such, the trial court abused its discretion by failing to require a written report by the guardian and failing to subject the guardian to cross-examination by the parties.
 {¶ 56} R.C. 3109.04(C) provides that a trial court can appoint an investigator in a child custody proceeding to investigate the character, family relations, past conduct, earning ability, and financial worth of each parent and to report in writing on its findings. Where a court requests such an investigation and report "* * * the investigator shall be subject to cross-examination by either parent concerning the contents of the report." Crosby v. Crosby (June 15, 1993), 10th Dist. No. 92AP-1455, 1993 Ohio App. LEXIS 3108, quoting R.C. 3109.04(C). InWebb v. Lane (Mar. 15, 2000), 4th Dist. No. 99CA12, 2000 Ohio App. LEXIS 1077, the Fourth District Court of Appeals stated, "a guardian ad litem's duties include investigating one or more [areas] and delivering a report and recommendation regarding the child's best interest." The guardian in the instant case essentially performed the function of the investigator by interviewing the parties, witnesses, and Christian and communicating with the trial judge.
 {¶ 57} Due process requires that, in a permanent custody determination, the parties have a "right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation. Without these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements." Inre Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 25. See, also, Webb.
 {¶ 58} Appellee argued that appellant has not established any incidents where the guardian provided information to the court outside the courtroom. The record reveals otherwise, as the guardian submitted an April 2002 bill to the trial court referencing two telephone conversations with the trial judge.
 {¶ 59} The trial court's failure to require the guardian to submit a report and the trial court's consideration of the guardian's findings, without providing the parties opportunity to cross-examine the guardian, violated due process and was an abuse of discretion. Accordingly, appellee's second assignment of error is well-taken.
 {¶ 60} Under the third assignment of error, appellant argues the trial court exceeded its authority and erred by ordering that Christian be treated by a psychologist mutually selected by the parties. A trial court has broad discretion, and given the nature of the proceedings and the evidence presented, the trial court did not exceed its authority by ordering that Christian be treated by a mutually-selected psychologist.
 {¶ 61} According to R.C. 3105.21(A), a trial court shall
make an order for the care and maintenance of the children of the marriage, as in their best interests. The trial court is not onlyauthorized to do so, but it must, and the trial court's authority in determining a child's best interest in a custody case extends farther than determining which parent should be granted permanent custody. Even when the parties do not specifically request, and it is not determined necessary by hearing, a trial court may order a child be treated by a mental health professional if the evidence shows such is warranted in the best interest of the child.
 {¶ 62} In the instant case, the parties have not only put their own mental health at issue by requesting permanent custody of Christian, but they have also put Christian's emotional well-being at issue. The trial court heard abundant testimony demonstrating that counseling would be in Christian's best interest, and this court concludes that it was well within the trial court's discretion to order Christian be treated by a mental health professional mutually-selected by the parties. Accordingly, appellant's third assignment of error is without merit.
 {¶ 63} Under the fourth assignment of error, appellant argues that the trial court erred by holding him in contempt of court for violating a visitation order because he argued he had reasonable cause to suspect abuse of Christian. Appellant requests this court to overturn the ruling. This assignment of error is without merit.
 {¶ 64} As we indicated earlier, appellant stated in his appellate brief that he purged himself of this contempt, and appellee did not dispute this. The assignment is thus moot.
 {¶ 65} In the alternative, we note that appellant failed to object to the magistrate's decision finding him guilty of contempt of court. Civ.R. 53(E)(3)(b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding of conclusion under this rule." It is well-settled in Ohio that if a party fails to object to a finding of fact or conclusion of law issued by a magistrate, the party is precluded from then raising the issue for the first time on appeal. Waltimire v. Waltimire (1989), 55 Ohio App.3d 275; Inre Stevens (Nov. 17, 2000), 11th Dist. No. 99-T-0066, 2000 Ohio App. LEXIS 5374, at 5. Because appellant did not object to the magistrate's decision that initially found appellant guilty of contempt, we are unable to reach the merits of appellant's assignment of error. Further, after the trial court adopted the magistrate's decision and sentenced appellant, he did not give notice of his intent to appeal this order and did not stay his sentence pending appeal.
 {¶ 66} In conclusion, appellant's fourth assignment of error is moot because the parties do not dispute that appellant purged himself of the contempt. Further, the issue is not appealable because appellant failed to object to the magistrate's decision, failed to give notice of his intent to appeal the contempt order, and failed to stay his sentence pending appeal.
 {¶ 67} In his fifth assignment of error, appellant argues that the trial court erred in adopting the magistrate's decision because, he contends, the decision is against the manifest weight of the evidence. Based on the foregoing analysis and our reversal of this matter, in part, we decline to address this issue because it is not ripe for review at this time.
 {¶ 68} Thus, we conclude that appellant's third, fourth, and fifth assignments of error are without merit and the judgment of the trial court is affirmed as to those assignments of error. However, appellant's first and second assignments of error are with merit to the extent indicated. Thus, the trial court's judgment entry is affirmed in part, reversed in part, and the matter is hereby remanded for further proceedings consistent with this opinion.
Ford, P.J., O'Neill, J., concur.
[1] The report by Dr. Stephen Neuhaus indicates that John Stanton was thirteen years old when interviewed on December 4, 2000. No specific date of birth is indicated in the record.
[2] On August 6, 2001, three days after denying visitation to appellee, appellant moved for relief from the interim visitation order. This motion was denied on August 14, 2001.
[3] According to Neuhaus' testimony, suicidal ideation differs from attempted suicide. Suicidal ideation occurs when a person has thoughts of suicide, and attempted suicide occurs when a person acts on these thoughts.
[4] For example, the magistrate's report did not contain any evidence that the trial judge had communicated with the guardian. The guardian first communicated ex parte with the trial court after the magistrate's decision and one day prior to appellant's objections to the magistrate's decision, and the trial judge relied on this communication in fashioning a judgment entry. Likewise, the circumstances giving rise to appellant's contempt conviction occurred after the trial court's confirmation of the magistrate's report.
[5] Appellant requested this court to overturn his July 2001 contempt conviction. He is not asking this court to overturn his March 2002 contempt conviction which is discussed later.
[6] The magistrate did not suggest in her decision that Christian be treated by a psychologist or other mental health professional, but it appears as though the trial judge came to this conclusion after communicating, ex parte, with the guardian.