[Cite as *Renner v. Renner*, 2013-Ohio-4644.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| AMANDA L. RENNER n.k.a. FULTZ, | : | |
| | | CASE NO. CA2013-06-042 |
| Plaintiff-Appellant, | : | |
| | | O P I N I O N |
| | : | 10/21/2013 |
| - vs - | | |
| | : | |
| JEFFREY W. RENNER, | : | |
| | | |
| Defendant-Appellee. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2006DRA01678

Barbara J. Howard Co., LPA, Barbara J. Howard and Sarah C. Sanderson, 120 East Fourth Street, Suite 960, Cincinnati, Ohio 45202, for plaintiff-appellant

Cohen Todd Kite & Stanford, LLC, Jeffrey M. Rollman, 250 East Fifth Street, Suite 2350, Cincinnati, Ohio 45202, for defendant-appellee

**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Amanda Renner (n.k.a. Amanda Fultz) (Mother), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, finding her in contempt for changing her residence and relocating to a different school district, denying her contempt motion against defendant-appellee, Jeffrey Renner (Father), and

denying her motion for individual therapy for the parties' son.[1]

{¶ 2} The parties were married in 2004 and divorced by decree on April 23, 2008. Their son, Jack, was born in January 2005. At the time of the divorce, Mother resided in the Forest Hills School District. Father resided and continues to reside in the Milford School District. Father has not remarried. Mother has remarried and she and her husband care for six children (including Jack).

{¶ 3} The parties' divorce decree incorporated a shared parenting decree which, in turn, incorporated the parties' shared parenting plan (the Plan). Pertinent to this appeal are the provisions of the Plan regarding Jack's education and relocation. With regard to Jack's education, paragraph 14 of the Plan provides in relevant part: "The minor child of the Parties shall be enrolled in the appropriate Forest Hills public school through eighth grade." With regard to relocation, paragraph 32 of the Plan provides that:

> Neither Party shall remove the child from the State of Ohio, Hamilton County, or Clermont County for residence purposes, without written permission from the other Party or Court Order. Additionally, the provisions allowing either Party's movement to or from Hamilton County, or Clermont County, State of Ohio shall not confer jurisdiction upon any other County or State for purposes of determining custody of the minor child. There shall be a mandatory hearing prior to any residential or school changes of the minor child, unless agreed upon by the Parties and reduced to writing and journalized by an entry with the Court.

{¶ 4} In May 2012, due to the foreclosure of their home, Mother and her husband were forced to move out of their Forest Hills School District home. They moved on May 25 to Mt. Washington, Hamilton County, in the Cincinnati Public School District. Because Forest Hills School District does not have open enrollment, Jack could no longer attend school in that district after Mother moved to Mt. Washington.

{¶ 5} On May 15, 2012, Mother filed a notice of intent to relocate. The next day,

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.

Father sought a restraining order against Mother on the ground her relocation violated paragraph 32 of the Plan. On May 25, a magistrate granted the temporary restraining order, prohibiting Mother from both removing Jack from their Forest Hills School District home and enrolling him in any school district other than the Forest Hills School District. However, by the time Mother was served with the restraining order, she had already moved to Mt. Washington.

{¶ 6} On June 27, Mother filed an emergency motion to modify the Plan. The motion asked the trial court to modify the Plan to provide for Jack to attend school in the Cincinnati Public School District so that he could attend the Mt. Washington Elementary School and take advantage of programs for gifted children within the Cincinnati Public School District. Mother asserted in her motion that Jack was currently not enrolled in any school. On June 29, Father filed a contempt motion against Mother on the ground that her relocation to Mt. Washington violated both the Plan and the restraining order. Father's motion also asked for a court order to enroll Jack in the Pattison Elementary School in the Milford School District beginning with the 2012/2013 school year.

{¶ 7} Unbeknownst to Mother, Father had enrolled Jack in the Milford School District on June 1 for the 2012/2013 school year. As a result, Mother filed a contempt motion against Father on the ground the enrollment violated the Plan. On July 27, the magistrate held a hearing to determine the school Jack was to attend for the 2012/2013 school year. By decision journalized August 17, after comparing the respective elementary schools in Mt. Washington and Milford and the school districts' gifted programs, the magistrate found it was in Jack's best interest to attend second grade at Pattison Elementary School in the Milford School District for the 2012/2013 school year. The determination as to which school Jack was to attend after the second grade was postponed to a later date. Neither party objected to this magistrate's decision, and it was approved by the trial court.

{¶ 8}   On August 24, Mother filed a multi-grounded motion, including a request for individual therapy for Jack.  The motion asserted that while Jack was allowed to participate in Mother's therapy and had done so on an intermittent basis, and "while it ha[d] helped Mother better understand how to parent Jack and meet his needs, it has not provided the therapy that Jack needs at this time."   On September 7 and October 17, the magistrate held a hearing on the parties' contempt motions and Mother's multi-grounded motion.

{¶ 9}   By decision filed November 13, the magistrate found Mother in contempt for changing Jack's residence and school district without agreement of the parties and without filing a motion for a court hearing in violation of paragraph 32 of the Plan.  With regard to Father, the magistrate found he was not in contempt for enrolling Jack in the Milford School District "because Mother made it impossible for Jack to continue attending school in the Forest Hills School District when she moved outside the district."  Finally, the magistrate denied Mother's motion for individual therapy for Jack on the ground that "[t]he parties dispute the necessity of therapy for Jack.  Mother has failed to show that therapy for Jack is in his best interest."

{¶ 10} Mother filed objections to the magistrate's decision.  Mother argued that (1) given the ambiguous language of paragraph 32 of the Plan, the magistrate erred in finding her in contempt for moving out of the Forest Hills School District; (2) the magistrate erred in not finding Father in contempt for enrolling Jack in the Milford School District; and (3) given the discord between the parties and a "significant lack of uniformity in Jack's behavior as between his parents' households," the magistrate erred in denying her motion for individual therapy for Jack.  On May 7, 2013, the trial court overruled Mother's objections and affirmed the magistrate's November 13, 2012 decision.

{¶ 11} Mother appeals, raising three assignments of error.

{¶ 12} Assignment of Error No. 1:

- 4 -

{¶ 13} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT HELD MOTHER IN CONTEMPT FOR MOVING.

{¶ 14} Mother argues that because paragraph 32 of the Plan (which governs relocation by either parent) is ambiguous and its clauses contradictory, the trial court abused its discretion in holding her in contempt for moving out of the Forest Hills School District.

{¶ 15} "A court may find a party in contempt where that party fails to comply with a lawful judgment or court order." *Marden v. Marden*, 108 Ohio App.3d 568, 570 (12th Dist.1996); R.C. 2705.02(A). To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, the offending party had knowledge of the order, and the offending party violated such order. *Sparks v. Sparks*, 12th Dist. Warren No. CA2010-10-096, 2011-Ohio-5746, ¶ 11. A finding of contempt, however, "does not require proof of purposeful, willing, or intentional violation of a trial court's prior order." *Townsend v. Townsend*, 4th Dist. Lawrence No. 08CA9, 2008-Ohio-6701, ¶ 27, citing *Pugh v. Pugh*, 15 Ohio St.3d 136 (1984). Once the movant has established a prima facie case of contempt, the burden then shifts to the contemnor to prove his inability to comply with the court order. *Keeley v. Keeley*, 12th Dist. Clermont No. CA97-02-013, 1997 WL 411607, *3 (July 21, 1997). The inability which excuses compliance must "be real and not self-imposed, nor due to fraud, sharp practices, or intentional avoidance." *Id.*

{¶ 16} This court will not reverse a trial court's ruling on a motion for contempt absent an abuse of discretion. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 12, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10 (1981). When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *Cottrell* at *id.*

{¶ 17} The first clause of paragraph 32 of the Plan prohibits either party from "remov[ing] the child from the State of Ohio, Hamilton County, or Clermont County for

residence purposes, without written permission from the other Party or Court Order." The last clause of paragraph 32 requires "a mandatory hearing prior to any residential or school changes of the minor child, unless agreed upon by the Parties and reduced to writing and journalized by an entry with the Court."

{¶ 18} Mother argued below that in light of the first clause of paragraph 32, she did not violate the shared parenting plan because she moved to another location within Hamilton County. The magistrate found that "Mother violated the Court's orders when she moved without Father's agreement and without first asking for a hearing." As a result, the magistrate found her in contempt for changing Jack's residence and school district.

{¶ 19} The trial court likewise rejected Mother's interpretation of paragraph 32 of the Plan. The court found that although the first clause of paragraph 32 contained "the standard boiler plate language on removing the child from the geographic boundary of Hamilton or Clermont County without written permission or Court Order," paragraph 32 was also "expanded to require a hearing unless an agreed entry is journalized prior to any residential or school changes of the minor child. This provision is not ambiguous. This provision is the order of the Court under the [shared parenting decree adopting the Plan] journalized on April 28, 2008."

{¶ 20} We find the trial court abused its discretion in finding Mother in contempt for moving out of the Forest Hills School District. We first address the court's determination Mother is in contempt for changing Jack's school district.

{¶ 21} To be found in contempt, the offending party must violate a court order. *See Sparks*, 2011-Ohio-5746. In the case at bar, there is no evidence that Mother's move to Mt. Washington actually caused a school change for Jack. While Mother's move may have resulted in a school change for Jack when the 2012/2013 school year started, intervening events precluded this possibility.

{¶ 22} Because Mother moved to Mt. Washington on May 25, Jack presumably finished his 2011/2012 school year in the Forest Hills School District. On June 27, Mother moved the trial court to modify the Plan to allow her to register Jack in the Cincinnati Public School District so that he could attend the Mt. Washington Elementary School. Mother asserted in her motion that Jack was currently not enrolled in any school. Unbeknownst to her, Father had enrolled Jack in the Milford School District on June 1.[2] Father subsequently moved for a court order to enroll Jack in the Milford School District beginning with the 2012/2013 school year. The magistrate conducted a hearing on Jack's school placement on July 27, and by decision filed on August 17, ordered that Jack be enrolled in the Milford School District. Therefore, prior to Jack's attendance in any school other than a school in the Forest Hills School District, the trial court had approved such a school change in compliance with paragraph 32 of the Plan.

{¶ 23} In light of the foregoing, we find that Mother did not violate paragraph 32 of the Plan. The trial court's decision finding Mother in contempt for changing Jack's school district is therefore unreasonable and an abuse of discretion.

{¶ 24} We likewise find the trial court abused its discretion when it found Mother in contempt for changing Jack's residence.

{¶ 25} For a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific, and unambiguous terms so that the person will know exactly what duties or obligations are imposed upon him. *See Bishop v. Bishop*, 5th Dist. Stark No. 2001CA00319, 2002 WL 596825 (Apr. 15, 2002). The first clause of paragraph 32 requires a party to obtain a written permission or a court order if that party

---

2. We note that in his brief, Father states he "did not believe that he was actually changing schools at that time [i.e., when he enrolled Jack on June 1] as Jack was never officially withdrawn from the Forest Hills School District."

- 7 -

moves outside of Ohio, Hamilton County, or Clermont County for residence purposes. It is undisputed that Mother remained within Hamilton County after she moved to Mt. Washington. The last clause of paragraph 32 requires a hearing prior to *any residential change* unless a written agreed entry is journalized prior to the residential change.

{¶ 26} We find the foregoing two clauses are conflicting, and as a result, paragraph 32 is ambiguous. Under the first clause, no action is required if a party moves within Hamilton County or Clermont County, Ohio for residence purposes. If, however, a party moves outside of Ohio, Hamilton County, or Clermont County for residence purposes, that party must first obtain the other party's written permission or a court order. On the other hand, under the last clause, a party's change of residence, whether within or outside of Ohio, Hamilton County, or Clermont County, is permissible only if both parties agree to the residence change and the written agreement is journalized. If both conditions are not met, then a hearing is mandated.

{¶ 27} Paragraph 32 also clearly requires each party to "notify the Court of any intent to relocate" by filing a notice of intent to relocate with the trial court and forwarding a copy of the notice to the other party. *See* paragraph 32, subsection A. The language of subsection A is clear and unambiguous. The record shows that Mother complied with paragraph 32, subsection A when she filed her notice of intent to relocate on May 15, 2012.

{¶ 28} In light of the ambiguity in paragraph 32 of the Plan, created by the conflicting nature of its first and last clauses, we find that the element of contempt that Mother "had knowledge of the order" (which she was alleged to have violated) was not established. The trial court therefore abused its discretion in finding Mother in contempt for moving to another residence within Hamilton County.

{¶ 29} Mother's first assignment of error is well-taken and sustained.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FIND

FATHER IN CONTEMPT FOR ENROLLING THE MINOR CHILD IN THE MILFORD SCHOOL DISTRICT.

{¶ 32} Mother argues the trial court abused its discretion in denying her contempt motion against Father. Mother asserts that Father's enrollment of Jack in the Milford School District, which occurred before Father moved the trial court for a court order to enroll Jack in that school district, was in direct violation of paragraph 14 of the Plan.

{¶ 33} The trial court overruled Mother's objection and upheld the magistrate's denial of Mother's contempt motion as follows:

> At issue is whether Father violated Section 32 of the Shared Parenting Plan by enrolling the child in Milford Schools. Once Mother relocated, Jack could no longer attend school in the Forest Hills School District. Father testified he registered Jack on June 1, 2012, in the Milford School District in order to reserve a spot for Jack. Regardless of whether the registration constituted a school change for Jack, Father is not in contempt for a situation that was caused by Mother.

{¶ 34} We find the trial court did not abuse its discretion in concluding Father was not in contempt for enrolling Jack in the Milford School District. The record shows that after Mother moved to Mt. Washington, Jack could no longer attend the Forest Hills School District as the school district did not allow open enrollment. On June 1, 2012, Father enrolled Jack in the Milford School District in order to "hold a place" for him. While Jack's June 1 enrollment did not comply with paragraph 14 of the Plan, the record shows that shortly after, Father moved for a court order to enroll Jack in the Milford School District. On August 17, 2012, the magistrate approved the school change and implicitly granted Father's motion when it found it was in the best interest of Jack to attend second grade in the Milford School District. Additionally, as discussed earlier with regard to Mother's relocation to a different school district, the mere fact that Father enrolled Jack in the Milford School District did not result in an actual school change for Jack as it occurred during the summer months, and thus,

between school years.

{¶ 35} Given the foregoing circumstances, we uphold the denial of Mother's contempt motion against Father.

{¶ 36} Mother's second assignment of error is overruled.

{¶ 37} Assignment of Error No. 3:

{¶ 38} THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ORDER THERAPY FOR THE MINOR CHILD.

{¶ 39} Mother argues that given the fact the parties have a contentious relationship and disparate views regarding Jack's need for therapy, and the fact Jack exhibits very different behaviors in each parent's household, the trial court's first step should have been to consult a mental health expert, and the trial court abused its discretion and failed to consider Jack's best interest when it denied individual therapy for Jack.[3]

{¶ 40} The trial court overruled Mother's objection and upheld the denial of Mother's motion for individual therapy for Jack as follows:

> Mother testified that Jack was enrolled in therapy with Dr. Kristine Huiet. Therapy with Dr. Huiet was terminated because, as Mother testified, Dr. Huiet "was not helpful." Mother further testified that Jack saw an occupational therapist for short-term therapy but that there was no need to continue. Father testified that he does not believe Jack needs therapy. Mother argued that she believed Jack would benefit from therapy because she was at a loss to deal with his behavior. There was no other evidence supporting Mother's position. Mother failed to present sufficient

---

3. Unlike in her motion for individual therapy, Mother describes in her brief the behavior exhibited by Jack at her home:

> In Mother's home, over time, Jack has displayed behaviors such as anxiety, fear of going to the bathroom alone, and compulsiveness. He has also often demeaned himself and seems to be in his own world to the point that he is sometimes not aware of the need to be careful of moving vehicles while in a parking lot or will fall off a chair despite his usually excellent coordination.

Father testified that Jack does not exhibit these behaviors at his home. The record indicates that Jack is a very intelligent child, an only child in Father's home, and one of six children in Mother's home (in addition to Jack, the six children include the three children of Mother's husband from a previous marriage, Mother's daughter from a relationship prior to her marriage with Father, and the child Mother and her husband had).

- 10 -

evidence to show that court ordered therapy is in Jack's best interest.

**{¶ 41}** "A trial court may order a child be treated by a mental health professional if the evidence shows such is warranted in the best interest of the child." *Schill v. Schill*, 11th Dist. Geauga No. 2002-G-2465, 2004-Ohio-5114, ¶ 61. We review the trial court's refusal to order individual therapy for Jack under an abuse of discretion standard. *See Purvis v. Purvis*, 4th Dist. Adams No. 00CA703, 2002 WL 220067 (Feb. 4, 2002).

**{¶ 42}** The record shows that Jack received therapy from Dr. Huiet from January 2010 to April 2011. During the September 7 and October 17, 2012 hearing, Mother testified Jack stopped seeing Dr. Huiet because it was not helpful. Father testified he was opposed to Jack receiving therapy at this point; further, he did not believe Jack needed therapy. Mother testified Jack would benefit from individual therapy because:

> There are times when Jack exhibits behaviors that I am sort of at a loss to deal with. He's very smart, he's changed over time, and sometimes I know how to deal with him but it is very different than my other kids and a lot of the techniques that we use with the other kids don't work with Jack.

**{¶ 43}** Mother also testified she started seeing a therapist in April 2012 to help her parent Jack. Mother testified her therapy was helpful "to understand how to deal with kids who are bright as [Jack] is and the way that his behavior morphs." The record shows that Jack was with Mother during three of Mother's therapy sessions (but Jack was not a patient) and that during one of the sessions, he was screened by Mother's therapist. Mother testified the screening helped her immensely in understanding that some of Jack's "issues [ ] have to do with his intellect. Maybe they're not behavioral problems so much as boredom problems because he's so smart." Mother also testified that Jack has some issues with anxiety and being very impulsive and that individual therapy would be beneficial in that regard.

**{¶ 44}** Upon reviewing the parties' foregoing testimony, we find that the trial court did

not abuse its discretion in denying Mother's motion for individual therapy for Jack. There was very little testimony as to why Jack should again receive individual therapy. Mother's testimony focused more on her difficulties at times in parenting Jack than on why individual therapy was in Jack's best interest. Given her testimony, Mother failed to show the trial court acted in an unreasonable, unconscionable, or arbitrary manner in declining to order individual therapy for Jack or in not consulting a mental health expert. *See Schill*, 2004-Ohio-5114 (finding the trial court did not abuse its discretion in ordering counseling for a child where the trial court heard abundant testimony demonstrating that counseling would be in the child's best interest).

{¶ 45} Mother's third assignment of error is overruled.

{¶ 46} Judgment affirmed in part and reversed in part.

PIPER, J., concurs.

RINGLAND, P.J., concurs separately.

**RINGLAND, P.J., concurring separately.**

{¶ 47} I agree with the majority that the third assignment of error did not warrant remand under the abuse of discretion standard. However, I write separately to note that the better practice would have been to appoint an independent expert to advise the court as to the child's need for individual therapy. Admittedly, the parties did not provide expert evidence to support or refute the child's perceived psychological issues. However, upon review of the record, this appears to be a very intelligent and sensitive child who is the victim of an acrimonious divorce. This child's future mental health may be at risk, and that is far too important to leave to the parties' ability to competently present evidence for or against his need for therapy without expert evidence and guidance on the issue.