[Cite as *Renner v. Renner*, 2014-Ohio-2237.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| AMANDA L. RENNER n.k.a. Fultz, | : | |
| Plaintiff-Appellant, | : | CASE NO.   CA2014-01-004 |
| | : | O P I N I O N |
| - vs - | | 5/27/2014 |
| | : | |
| JEFFREY W. RENNER, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 06 DRA 01678

Barbara J. Howard Co., L.P.A., Barbara J. Howard, Sarah C. Sanderson, 120 East Fourth Street, Suite 960, Cincinnati, Ohio 45202, for plaintiff-appellant

Rollman & Handorf, LLC, Jeffrey M. Rollman, 5740 Gateway Blvd., Suite 202, Mason, Ohio 45040, for defendant-appellee

**PIPER, J.**

{¶ 1}   Plaintiff-appellant, Amanda Renner (n.k.a. Amanda Fultz) (Mother), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, granting custody of the parties' child to defendant-appellee, Jeffrey Renner (Father).[1]

---

1. Pursuant to Loc.R. 6(A) we sua sponte remove this case from the accelerated calendar for the purpose of issuing this opinion.

{¶ 2} The parties were married in 2004, and had one child born issue of the marriage. The parties divorced in 2008, and entered into a shared parenting plan, which was incorporated into the parties' divorce decree. Part of the shared parenting plan provided that the child would remain in Mother's school district, Forest Hills, until the eighth grade and that the parties would not relocate their respective residences without first informing the other party.

{¶ 3} In May 2012, Mother filed a notice of intent to relocate because the home she shared with her new husband and six children had been foreclosed upon.[2] Mother and her new husband relocated to a home located within the Cincinnati Public School District despite a temporary order from the magistrate prohibiting Mother from enrolling the child in that school district. Upon learning of Mother's intent to relocate, Father filed a contempt motion against Mother, and enrolled the child in the Milford Public School District. A magistrate held a hearing, and found it in the child's best interest to attend the Milford schools. Neither party objected to the magistrate's decision, and Father's contempt motion was left unresolved at the time.

{¶ 4} In August 2012, Mother filed a motion requesting, among other things, that the magistrate order the child to attend individual therapy. Both parties agree that their child is gifted, and Mother has taken an active role in pursuing the child's participation in programs for gifted children. Mother also contends that the child's gifted nature causes behavioral issues, including the child having "meltdowns," hitting other people, defecating and urinating on himself, and having extreme anxiety. Mother moved the court to order individual therapy for the child to combat these issues.

{¶ 5} The magistrate held a hearing on Mother's motion for therapy as well as on

2. The six children include the parties' child, Mother's other child from a previous relationship, Mother's child with her new husband, as well as her new husband's three children from a previous relationship.

Father's still-pending contempt motion. The magistrate found Mother in contempt for her attempt to enroll the child in the Cincinnati Public School District, and also denied Mother's motion for counseling. Mother filed objections to the magistrate's decision and the trial court overruled Mother's objections and adopted the magistrate's decision. Mother then appealed the trial court's decision to this court, and we affirmed. *Renner n.k.a. Fultz v. Renner*, 12th Dist. Clermont No. CA2013-06-042, 2013-Ohio-4644.

{¶ 6} In 2013, when the child was eight years old, Father filed several motions, including a motion to terminate or modify the parties' shared parenting plan. The magistrate scheduled a hearing on Father's motions. Before the hearing occurred, Mother identified an expert witness she planned to call regarding the needs of "gifted" children, as well as the specific need of the parties' own child based upon testing performed by her expert. The magistrate determined that Mother had failed to share evidence of her expert's testing of the child within the given discovery deadline, rendering such results inadmissible at the hearing. However, the magistrate permitted Mother's expert to testify generally about gifted children. Mother was also permitted to proffer her expert's anticipated testimony, specific to the parties' child and his needs.

{¶ 7} Also before the hearing occurred, the magistrate re-appointed a guardian ad litem (GAL) and ordered an updated report. The GAL, who had been involved in the case for several years, met with and interacted with Mother, Father, the parties' child, and several other witnesses. The GAL filed her updated report with the magistrate, and each party had access to the report. The GAL's report was favorable to Father having custody, and suggested that Mother had parenting issues that needed to be addressed.

{¶ 8} After the hearing, the magistrate issued a decision, ordering that Father have custody of the child and setting standard parenting time for Mother. Mother objected to the magistrate's decision for multiple reasons, including that the magistrate failed to consider her

- 3 -

expert's full testimony. Mother also objected to the magistrate's decision granting Father custody. The trial court addressed Mother's objection regarding the magistrate not considering her expert's full testimony. The trial court stated that it would consider the expert's testimony as proffered, and the trial court's written decision reflects consideration of the expert testimony. However, the trial court overruled Mother's objections to the magistrate's custody determination, and adopted the magistrate's decision, with a modification for more visitation time for Mother. Mother now appeals the trial court's decision, raising two assignments of error. We will address both assignments of error together for ease of discussion since they are interrelated.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORIGINALLY EXCLUDED THE EXPERT'S TESTIMONY CONCERNING [THE CHILD] AND WHEN IT GAVE IT LITTLE OR NO WEIGHT.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO AWARD MOTHER CUSTODY OF THE PARTIES' MINOR CHILD, AND INSTEAD AWARDED CUSTODY TO FATHER.

{¶ 13} Mother argues in her assignments of error that the trial court erred by not giving her expert's testimony enough weight and by granting Father custody of the parties' child.

{¶ 14} According to R.C. 3109.04(E)(2)(c), "the court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children * * *." If the trial court terminates a prior shared parenting plan, the court "shall proceed" and allocate parental rights and responsibilities as if no shared parenting plan had ever been granted. R.C.

- 4 -

3109.04(E)(2)(d). The court is obligated to designate one parent the residential parent and legal custodian of the child "in a manner consistent with the best interest of the" child. R.C. 3109.04(A)(1).

{¶ 15} Pursuant to R.C. 3109.04(F)(1), a court is required to consider all relevant factors when making a determination as to what is in a child's best interest. Those factors include,

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 16} An appellate court employs an abuse of discretion standard when reviewing a domestic relations issue so that the trial court's decision will only be reversed if it is unreasonable, arbitrary, or unconscionable. *Smith v. Smith,* 12th Dist. Butler No. CA2005-04-091, 2006-Ohio-2136, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Upon review, an appellate court may not substitute its judgment for that of the trial court because the "discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-02-019, CA2008-03-021, 2009-Ohio-2201, ¶ 15, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶ 17} Although a review of the trial court's detailed written opinion demonstrates that the trial court clearly considered each of the statutory factors, Mother claims that the trial court did not give sufficient weight to her expert's testimony, and gave too much weight to the GAL's report. However, we find neither to be the case.

{¶ 18} The trial court accepted a report from the GAL, which detailed the GAL's multiple interactions with the child, Mother, Father, and other witnesses. The trial court made several references to the GAL's report when it balanced the best interest factors, but did not place too much weight on any one statement or suggestion contained in the GAL's report. Instead, the trial court considered each best interest factor based upon all of the evidence and testimony presented at the hearings, rather than any over-reliance on the GAL's report.

{¶ 19} The record also indicates that the trial court expressly stated that Mother's expert was properly identified prior to the discovery cutoff date, and that the court would consider the expert's proffered testimony "in a review of the factors considered in allocating

parental rights and responsibilities." The trial court also noted within several of Mother's objections that it had considered her expert's testimony when determining the merits of the objections, as well as when balancing the best interest factors. Therefore, the record indicates that the trial court gave proper weight to the testimony of Mother's expert, and her assignment of error regarding that issue is overruled.

{¶ 20} Despite Mother's contention that the trial court placed an improper emphasis on the GAL's report and not enough emphasis on her expert's testimony, the record demonstrates that the trial court properly considered and balanced the statutory factors before determining that it was in the child's best interest to be in Father's custody.

{¶ 21} Regarding the wishes of the child's parents regarding the child's care, the record demonstrates that both parties wanted to end the shared parenting agreement, and that both parties wanted custody of the child. The court did not interview the child regarding his wishes.

{¶ 22} The court considered the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest. The trial court noted that no one else lives with Father, while Mother has remarried and her blended family now includes her husband and five other children.

{¶ 23} A large portion of the testimony elicited at the hearing was specific to the child's adjustment to his home, school, and community. During the time the shared parenting plan was in effect, the parties had equal time with the child. The court heard evidence that when the child is in Mother's care, he has difficulty doing "routine things", including dressing himself and preparing for school. Mother reported that the child falls off his chair, seems unaware of his environment, and walks into people or objects. Mother also reported that the child shows signs of anxiety while in her home, including clapping his hands in a repetitive manner, chewing his fingers, demeaning himself when doing homework, refusing to go to the

bathroom by himself, and defecating and urinating on himself.

**{¶ 24}** At Mother's home, the child tends to grow weary of playing with neighborhood children, and associates more with Mother and his half and step siblings. Mother permits the child to play on the computer and IPad in an attempt to limit or lessen the intensity of "meltdowns" that he has, especially on days that he transitions from Father's care back into her home. The child also exhibits "self-control issues," when in Mother's care, including picking his nose and then touching people, running through the grocery store and parking lots, interrupting people, hitting Mother, and crying easily. Given his behavior, Mother has expressed her belief that the child has Asperger's Syndrome.

**{¶ 25}** Conversely, the trial court heard testimony that the child does not exhibit any of the behavioral issues when he is with Father. Father testified that the child is not reluctant to use the restroom while in his care, but that the child does use pull ups at night because of bed wetting. However, Father testified that he too suffered from bed-wetting as a child, as did his father before him. Father also testified that he has consulted the child's pediatrician about the bed-wetting and that given the family's history, there is no concern that the child will not outgrow the condition. The court also heard evidence that while the child is in Father's care, he does not hit or act violently toward anyone, he is not disruptive or withdrawn, and that there are no concerns regarding the child's social skills. Father testified that the child has many friends at school and in the neighborhood where Father lives. The child is involved with extra-curricular activities while in Father's care, including participating in the school play, Tae Kwon Do and Cub Scouts. The court also heard evidence that the child is not disoriented or unfocused while in Father's care, and that he does not cry easily or exhibit inappropriate behavior. Nor does the child exhibit the behaviors he does at Mother's home when he is in school or at other social activities.

**{¶ 26}** The court also considered extensive evidence regarding the mental and

physical health of all persons involved in the situation. Mother testified that she has Asperger's Syndrome, and her symptoms include the need to tell the truth in every situation, an aversion to being touched, sensitivity to loud noises, and the need for "down time" when she returns home from work. Mother repeatedly has subjected the child to various testing, including intelligence testing, Autism screening, cognitive evaluations, and testing to determine whether the child would qualify for an academic program designed for gifted students. Mother's expert testified to the mental state that most gifted children exhibit, including having a good memory, being intense, and having some social problems because they are different from nongifted children. The trial court also heard evidence that the child has suffered from constipation in the past, and has been given medication as a result. The court did not hear any evidence that Father has any physical or mental concerns.

{¶ 27} The trial court also considered evidence regarding which parent was more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. The court noted that while neither party had directly interfered with the other party's parenting time, Mother often does not permit the child to attend and participate in activities during her parenting time. For example, Mother did not permit the child to attend an annual Cub Scout banquet, will not permit the child to attend Cub Scout camp unless such camp falls during Father's summer vacation visitation, and sometimes does not take the child to his Tae Kwon Do lessons.

{¶ 28} The court also heard evidence that Mother had disobeyed court orders in the past by taking the child to be tested when the court's orders gave Father responsibility for any testing of the child, and also talked to the child about attending a school for gifted children even though the court had ordered a specific placement in Father's school district. Mother also moved the child from her school district without first informing Father, as was required by the shared parenting plan.

{¶ 29} Regarding whether either parent had failed to make all required child support payments, the court noted that Father was under an obligation to pay support, and had done so without any delinquencies. No evidence was presented to establish that either parent or household member had been convicted of or pled guilty to a criminal offense resulting in the child being an abused child or a neglected child. Nor was any evidence submitted that either party had or intended to establish a residence outside of Ohio.

{¶ 30} Regarding any other factor, the court noted that the parties have a contentious relationship. Mother will not speak to Father in public, instead choosing to stare off into space if he speaks to her. Neither Father nor his mother (the child's paternal grandmother) are permitted to come to Mother's home, and Mother testified that when she answers Father's questions, she only tells him what she thinks he needs to know. Mother also testified that she does not answer Father's phone calls, and does not believe that it is her responsibility to provide Father with results of the child's testing.

{¶ 31} The court also noted that Mother's testimony was not credible in many aspects, including the reasons she pursued the child's testing, why she wanted him to have therapy, as well as Mother's description of the child's "bizarre behavior."

{¶ 32} After reviewing the record, we find that the trial court did not abuse its discretion in finding that the child's best interests would be served by Father having custody. As such, Mother's second assignment of error is overruled.

{¶ 33} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.