[Cite as *Evans-Dorn v. Dorn*, 2015-Ohio-5032.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| HEATHER N. EVANS-DORN, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2015-03-031 |
| | : | O P I N I O N |
| - vs - | | 12/7/2015 |
| | : | |
| MATTHEW N. DORN, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2013 DRA 00767


The Farrish Law Firm, Michaela M. Stagnaro, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for plaintiff-appellant

Rollman & Handorf LLC, Jeffrey M. Rollman, 5740 Gateway Blvd., Suite 202, Mason, Ohio 45040, for defendant-appellee


**HENDRICKSON, J.**

{¶ 1} Plaintiff-appellant, Heather N. Evans-Dorn (Mother), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, determining custody and visitation rights in a divorce case. For the reasons set forth below, we affirm.

{¶ 2} Mother and defendant-appellee, Matthew N. Dorn (Father), were married on March 5, 2011, and had one daughter together, E.D., born October 26, 2011. Mother had

another daughter, I.E., from a previous relationship. The family initially resided in a home in Bethel, Ohio while Father worked for Duke Energy and Mother stayed home to care for the children. Father worked extensive overtime, and the parties decided it would be best for the family for Father to secure a transfer within the company to North Carolina. Father and Mother traveled to North Carolina to search for a home together, and a home in Cornelius, North Carolina was purchased. After moving some personal effects and the family's pets into the North Carolina home, Mother decided she did not want to move to North Carolina or remain married to Father. Mother subsequently filed a complaint for divorce on June 18, 2013. The trial court entered a temporary order allocating parental rights and responsibilities. Mother was named the residential parent and Father was given parenting time in Ohio on alternating weekends.

{¶ 3} The allocation of parental rights and responsibilities was a significant point of contention between the parties during the pendency of the proceedings. Mother requested E.D. live primarily with her under a shared parenting plan. Father sought sole custody of E.D. or, as an alternative, shared parenting. The court ordered a parenting investigation to be completed to assist it in its custody determination. The court's parenting investigator filed a report on March 18, 2014, in which the investigator discussed the difficulties the parties' have in communicating with one another and recommended that the court consider appointing a guardian ad litem for the child.

{¶ 4} Thereafter, Father filed a motion for the appointment of a guardian ad litem, and the court granted the motion. Carla Leader was appointed as E.D.'s guardian ad litem. Leader corresponded and met with Mother, Father, and their various friends and family members. Leader filed an initial report on May 21, 2014, in which she recommended the court implement a shared parenting plan with Mother being the primary residential parent and Father having visitation every weekend. Months later, on October 10, 2014, Leader filed a

supplemental report in which she continued to recommend shared parenting, but this time she recommended that E.D. live primarily in North Carolina with Father.

{¶ 5} A final divorce hearing was held on October 23 and October 24, 2014. At the hearing, the trial court heard testimony from Mother, Father, mother's former foster parents, E.D.'s paternal grandmother, and Leader. Leader testified about her investigation, the parties' difficulties in communicating with one another, and her concerns about Mother's ability to provide stability and structure for E.D. Leader opined that E.D. needed to know both of her parents and have time with her sister, and Leader suggested Mother, who was unemployed, move to North Carolina to facilitate E.D.'s relationship with both parents.

{¶ 6} On February 26, 2015, the trial court issued its final decree of divorce in which it denied shared parenting. The trial court found it was in E.D.'s best interest to name Father the sole residential parent and legal custodian and to grant Mother parenting time for nine consecutive days each month.

{¶ 7} Mother now appeals, presenting the following assignment of error for our review:

{¶ 8} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES AS IT WAS NOT IN THE BEST INTEREST OF THE CHILD.

{¶ 9} In her sole assignment of error, Mother argues the trial court erred when it awarded Father sole custody of E.D. Mother argues it is in E.D.'s best interests for her to be designated the residential parent and legal custodian.

{¶ 10} R.C. 3109.04 governs the award of parental rights and responsibilities. In making this determination, the trial court's primary concern is the best interest of the child. *Rainey v. Rainey*, 12th Dist. Clermont No. CA2010-10-083, 2011-Ohio-4343, ¶ 12. The trial court must consider all relevant factors related to the child's best interest, including but not

limited to those specified in R.C. 3109.04(F)(1). *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8. These factors include the following: the wishes of the parents; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate visitation; whether one parent has denied the other parenting time; whether either parent has failed to make all child support payments; and whether either parent has established or is planning to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(a)-(j).

**{¶ 11}** With regard to whether shared parenting is in the child's best interest, the court must consider the additional factors set forth in R.C. 3109.04(F)(2). These factors include the ability of the parents to cooperate and make decisions jointly, the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent, any history or potential for abuse, the geographic proximity of the parents to one another, and the recommendation of the guardian ad litem. R.C. 3109.04(F)(2)(a)-(e).

**{¶ 12}** An appellate court will not disturb a trial court's decision with regard to the allocation of parental rights and responsibilities absent an abuse of discretion. *Rainey* at ¶ 15. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). When reviewing a trial court's decision, an appellate court "may not substitute its judgment for that of the trial court because the 'discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Renner v. Renner*, 12th Dist. Clermont No. CA2014-01-004, 2014-Ohio-2237, ¶ 16, quoting *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-02-019 and CA2008-03-021, 2009-Ohio-2201, ¶ 15.

{¶ 13} A review of the record indicates that the juvenile court engaged in a detailed evaluation of the relevant factors set forth in R.C. 3109.04(F)(1) and (2) before determining shared parenting was not in E.D.'s best interest and Father should be child's residential parent and legal custodian. The trial court found E.D. has a close and loving relationship with both parents, with her sister, and with her extended family on both sides. E.D. is attached to mother's former foster parents, who she has dinner with nearly every evening. E.D. is also attached to her paternal grandparents. E.D.'s paternal grandmother testified she and her husband intend to sell their home in Ohio and move closer to Father if Father is given custody of E.D. The paternal grandparents have another child, Father's sister, who lives in South Carolina, approximately 35 miles away from Father's home. The paternal grandparents and Father's sister intend to help care for E.D. while E.D. is in Father's custody.

{¶ 14} Mother testified that as of the date of the final divorce hearing, she was not employed. She has a bachelor's degree in psychology and is looking into renewing a substitute teaching license. If Mother obtains employment, she will continue to rely on her former foster parents and a family friend, Shannon Wise, to provide childcare for E.D. The court expressed concerns with Mother's choice of Wise as a caregiver, noting that Mother had admitted Wise's significant other has anger management issues and possible drug abuse issues. Mother also commented that Wise's son, who is autistic, has wandered out of Wise's home on occasion and Wise has allowed Mother's biological mother to live at her house. Mother testified she did not trust her biological mother to be alone with E.D.

{¶ 15} The court also considered the mental and physical health of Mother and Father and the type of stability and structure each parent could provide for E.D. Father was reported to be in good health. He has worked for the same company for over 15 years, and has stable housing in North Carolina. Father established his home in Cornelius, North Carolina prior to the parties' filing of divorce, believing Mother, E.D., and I.E. would be living in that

home as well. Father looked into daycares, schools, and pediatricians in the area. Father's job in North Carolina allows him a more structured work schedule, as he is no longer required to work up to 20 hours of overtime a week. Leader opined that "[E.D.] would have more structure, routine, and probably better care if she were in the custody of Father [as] Father has more of a focus on bedtime routines, education and structure, and seems to have more of a support network in his family."

{¶ 16} Leader expressed concern about the type of structure and routine E.D. would receive while in Mother's care. Mother is unemployed and takes prescription medication for depression, anxiety, and ADHD. Mother has struggled to provide stable housing for E.D. After separating from Father, Mother moved with the children from apartment to apartment. From May 2014 through October 2014, the time-frame between the guardian ad litem's two reports, Mother moved three times. Mother did not inform Leader of her moves and did not disclose that at least one of these moves occurred after eviction proceedings had been initiated against her.

{¶ 17} The court also heard testimony that Mother has struggled with keeping a set routine or schedule for E.D. and her sister. E.D.'s older sister was discharged from her preschool because she attended school less than 75 percent of the time. Mother was dismissed from a prior psychiatrist's practice for failing to keep appointments. Mother also failed to appear for her first appointment with the court's parenting investigator.

{¶ 18} Evidence was also introduced demonstrating that Mother allowed the children to stay awake late into the night and sleep late into the next day. Father testified Mother, E.D., and I.E. often stayed up late into the night playing together or watching television. When Leader met Mother for a scheduled visit at Mother's home around 1:00 p.m., E.D. was dressed in nothing but a diaper, Mother appeared to have recently awoken, and Mother was making breakfast foods for the children to eat.

{¶ 19} Additionally, the court heard testimony raising concerns about whether Mother routinely took E.D. to her doctor's appointments. Although Mother presented evidence that E.D. was in good health and was current on all her shots and well checkups, Father testified he had been contacted by E.D.'s pediatric office because E.D. and I.E. had missed so many appointments that the office was considering dropping them as patients. E.D. also had poor dental hygiene, with eight or more teeth experiencing dental decay. Mother blamed the dental decay on "bad genetics" and, according to Leader's May 2014 report, did not appear receptive to E.D.'s dentist's suggestions on ways to change E.D.'s diet and oral hygiene so as to control and prevent the dental decay.

{¶ 20} The trial court also heard testimony regarding the parties' geographical proximity to one another, their ability to communicate with one another, and the likelihood that each parent would honor and facilitate visitation. The court noted the parties lived about 430 miles apart and that Father's move to North Carolina occurred with Mother's approval and encouragement. According to both Mother and Father's testimony, Father took a job transfer to North Carolina in an effort to reduce his work hours so that he would have more time with Mother, E.D., and I.E. Mother initially intended to live with Father in North Carolina, but later changed her mind after moving some of her belongings and the family's pets into the North Carolina home. Father testified he would not have left Ohio if he knew Mother and the girls were not going to follow. According to Father, he is unable to transfer back to his previous work position in Ohio at this time.

{¶ 21} Evidence was presented at the divorce hearing demonstrating that Mother and Father have a contentious relationship and have difficulty communicating with one another. According to Leader, Mother and Father are "extremely incompatible." Both Mother and Father described various arguments and fights they engaged in during their marriage and after their separation. Father testified he had concerns that if Mother were named residential

parent of E.D., Mother would deny him parenting time, would refuse to allow E.D. to visit with her paternal family, and would refuse to share information about E.D.'s medical and dental appointments. Father claimed Mother had not abided by the court's temporary parenting time order and had made it difficult for him to exercise his parenting time with E.D. According to Father, Mother refused him his parenting time one weekend when E.D. was sick, although Father was capable of caring for an ill E.D. On another occasion, Mother refused Father parenting time because E.D. was breastfeeding, although E.D. was eating solid foods at the time as well. Mother often ignored Father's calls and texts when Father was trying to arrange parenting time, and she once hid her car in the parking lot of a closed business to avoid Father. These incidents led the court to believe that "Mother has not been supportive of Father's involvement in their daughter's life," and the court expressed concerns that "Mother will continue to deny Father parenting time and will do nothing to support and encourage the relationship between Father and their daughter." With these considerations in mind, the trial court ultimately concluded that it was not in E.D.'s best interest to grant shared parenting or to name Mother the residential parent and legal custodian.

{¶ 22} On appeal, Mother argues the court's concerns that she will not honor or facilitate Father's visitation or relationship with E.D. are not supported by evidence. She contends that the court's concerns "can be easily remedied with clear and detailed provisions in the court order as suggested by the parenting investigator. * * * The trial court could specify how Father was to be provided information and under what circumstances so both parents could understand their respective responsibilities."

{¶ 23} We find no merit to Mother's argument. The trial court heard testimony from Father and Father's mother that Mother interfered with Father's visitation. The court was also advised by the guardian ad litem that Mother uses E.D. to try and control Father. According to Leader, Mother "likes to play games with Father and without the pending litigation, she

very easily could withhold access to [E.D.]" Given the evidence before the court, we find that the court did not abuse its discretion when it determined it was not in E.D.'s best interest for Mother to be named residential parent and legal custodian.

{¶ 24} We also find no merit to Mother's arguments that the trial court ignored evidence demonstrating that Father is unable to care for E.D. Mother claims the trial court awarded Father custody of E.D. without considering that Father has never been E.D.'s primary caregiver and he has had help from his family when caring for E.D. since the child's birth. Mother argues putting E.D. in Father's custody will result in E.D. being placed in dangerous situations as Father owns guns that are not properly secured and he abuses alcohol on a daily basis. In support of her claim that Father abuses alcohol, Mother relies, at least in part, on evidence relating to Father's behavior while he was in high school and Father's two DUI convictions from 2004 and 2008.

{¶ 25} During the final divorce hearing, Father admitted to owning guns. Father testified he had purchased breach locks and trigger locks to secure the firearms. He also testified he removed the guns from his home in North Carolina. Father admitted he had two DUIs and occasionally drank alcohol. He denied, however, that he abused alcohol or drank daily. The court found Father's testimony credible, concluding that "[t]here is no credible evidence that Father abuses alcohol." The trial court was entitled to believe Father's testimony and evidence over Mother's on this matter. *See Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 15; *In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 21 ("[a] reviewing court must keep in mind that the trial court is better equipped to examine and weight evidence, determine the credibility, attitude and demeanor of witnesses, and make decisions concerning custody"). The court was also entitled to find Father's testimony that he had secured and removed the guns for E.D.'s safety credible.

{¶ 26} Accordingly, having thoroughly reviewed the record before us, we conclude that the trial court did not abuse its discretion in denying shared parenting and awarding Father sole custody of E.D. The trial court considered the relevant factors set forth in R.C. 3109.04(F) in making its determination, and the court's decision is supported by competent, credible evidence. Mother's sole assignment of error is, therefore, overruled.

{¶ 27} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.