[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Torres Friedenberg v. Friedenberg*, Slip Opinion No. 2020-Ohio-3345.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3345

TORRES FRIEDENBERG, APPELLANT, *v.* FRIEDENBERG, APPELLEE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Torres Friedenberg v. Friedenberg*, Slip Opinion No. 2020-Ohio-3345.]**

*Application of physician-patient privilege, R.C. 2317.02(B), in domestic-relations cases that include claims for child custody or spousal support—Court of appeals' judgment upholding trial court's order compelling release, subject to protective order, of relevant medical records affirmed.*

(No. 2019-0416—Submitted February 11, 2020—Decided June 18, 2020.)

APPEAL from the Court of Appeals for Lake County, No. 2017-L-149, 2019-Ohio-325.

_____

**FRENCH, J.**

{¶ 1} This discretionary appeal concerns the contours of Ohio's physician-patient privilege, R.C. 2317.02(B), and its application in domestic-relations cases that include claims for child custody or spousal support.

{¶ 2} The Lake County Court of Common Pleas, Domestic Relations Division, ordered the release, subject to a protective order, of the mental-health records of appellant, Belinda J. Torres Friedenberg, whose records had been submitted to the court in response to a subpoena duces tecum and a court order. In a split decision, the Eleventh District Court of Appeals affirmed that order, holding that the physician-patient privilege did not shield the records from discovery, because Belinda's claims for child custody and spousal support put her mental and physical conditions at issue in the pending divorce proceeding. We affirm that judgment.

### Facts and procedural background

{¶ 3} Belinda and appellee, Keith A. Friedenberg, were married in 1991. They had four children during the course of their marriage.

{¶ 4} In March 2016, Belinda filed a complaint for divorce in which she requested custody of the parties' minor children and spousal support. Keith filed an answer and a counterclaim in which he also sought custody of the children.

{¶ 5} During discovery, Keith issued subpoenas for Belinda's mental-health records to various doctors and mental-health professionals, including Anna J. Janicki, M.D., at the Cleveland Psychoanalytic Center. Belinda filed a motion to quash those subpoenas, asserting the physician-patient privilege. Keith responded with a motion to compel compliance with the subpoenas; he argued that Belinda's claims for custody and spousal support placed her physical and mental conditions at issue and gave rise to a statutory exception to the physician-patient privilege.

{¶ 6} The trial-court magistrate denied Belinda's motion to quash and granted Keith's motion to compel. She agreed that Belinda placed her physical and mental conditions at issue by asserting claims for child custody and spousal support, both of which require the court to consider the parties' mental and physical conditions. The magistrate ordered that the subpoenaed records be submitted under seal to the court for an in camera determination of their relevance, although she

2

stated, "[I]t is hard to imagine a scenario where the mental health records of a parent would not be relevant to issues surrounding the allocation of parental rights and responsibilities and the best interests of the children."[1]

{¶ 7} After Dr. Janicki submitted responsive records to the court, the magistrate issued an order stating: "The records will not be 'released' to counsel; however the records that are relevant will be made available to counsel for both parties who can examine them at Court * * *. Records can be marked if counsel expect to use them at trial and copies can be made for use as exhibits." The order did not indicate whether the magistrate had completed an in camera review of the records. Dissatisfied with the magistrate's order and arguing that it hindered his ability to prepare for trial, Keith filed a motion to set it aside.

{¶ 8} On October 16, 2017, the magistrate issued an order stating that she had reviewed Dr. Janicki's records in camera and had determined "there are documents that are relevant to these proceedings." The magistrate ordered counsel for the parties to draft a protective order to limit dissemination of the records to counsel, the parties, and their experts.

{¶ 9} The trial judge overruled a motion filed by Belinda to set aside the magistrate's October 16, 2017 order. The judge agreed with the magistrate that Belinda's requests for child custody and spousal support put her physical and mental conditions at issue and waived the physician-patient privilege. She noted the magistrate's in camera review and stated that the magistrate had determined "the documents were relevant" to the divorce proceeding. She adopted the protective order submitted by Keith's counsel and ordered the immediate release of Dr. Janicki's records, subject to the protective order.

---

1. Belinda subsequently caused to be served on Keith's psychologist a subpoena ordering production of Keith's medical file. Belinda later filed a motion to compel compliance with that subpoena, which the trial court granted. In her motion to compel, Belinda argued that the parties had placed their mental health at issue by seeking custody of the minor children.

{¶ 10} Belinda appealed and filed motions in both the trial court and the court of appeals to stay the order to release her mental-health records. Both courts denied her motions to stay.

{¶ 11} The parties report that the trial court adopted their agreed shared-parenting plan in March 2018, while Belinda's appeal was pending in the court of appeals.

{¶ 12} A divided panel of the Eleventh District affirmed the trial court's order. The majority held that a parent seeking child custody or a party seeking spousal support waives the physician-patient privilege because a trial court is statutorily required to consider the mental and physical conditions of a parent seeking child custody in determining the best interest of the child and to consider the mental and physical conditions of the parties in determining whether spousal support is appropriate and reasonable. The dissenting judge, on the other hand, stated that Belinda's mental and physical conditions are not at issue, because Keith did not challenge Belinda's mental or physical ability to parent and neither Keith nor Belinda raised health concerns related to Belinda's ability to work. The dissenting judge also concluded that the trial court abused its discretion by ordering the release of all of the records, because the magistrate indicated that not *all* of the records were relevant.

{¶ 13} We accepted a discretionary appeal to address two propositions of law concerning whether, and to what extent, a request for child custody or spousal support constitutes a waiver of or an exception to the physician-patient privilege. Those propositions state that (1) a request for custody does not constitute a complete abrogation of the privilege when the health records do not relate to the party's ability to parent and (2) a request for spousal support does not constitute a complete abrogation of the privilege when the health records do not relate to the party's earning ability. Belinda's merit brief sets out six propositions of law, in contrast to her memorandum in support of jurisdiction, which sets out just the two

propositions of law mentioned above. The first and second propositions of law in her brief resemble those argued in her memorandum in support of jurisdiction. To the extent the additional propositions of law address arguments not raised in the memorandum in support of jurisdiction, we decline to address them. *See Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, ¶ 27, citing *In re Timken Mercy Med. Ctr.*, 61 Ohio St.3d 81, 87, 572 N.E.2d 673 (1991).

*Analysis*

{¶ 14} Civ.R. 26(B)(1) establishes a broad scope for pretrial discovery: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." The question here is whether the physician-patient privilege shields Belinda's mental-health records from discovery.

**The physician-patient privilege in Ohio**

{¶ 15} R.C. 2317.02(B)(1) prohibits, except in limited circumstances, a physician from testifying "concerning a communication made to the physician * * * by a patient in that relation" or concerning the physician's advice to a patient. Communications between a licensed psychologist and a client are subject to the same protections as communications between a physician and a patient. R.C. 4732.19.

{¶ 16} The physician-patient privilege did not exist at common law. *State Med. Bd. v. Miller*, 44 Ohio St.3d 136, 140, 541 N.E.2d 602 (1989), citing McCormick, *Evidence*, Section 98, at 243 (3d Ed.Lawyers' Ed.1984). Accordingly, we construe the statutory privilege strictly against the party asserting it and apply it only to those circumstances the statute specifically prescribes. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 15.

{¶ 17} Belinda stresses the importance of the physician-patient privilege, particularly in the context of mental-health treatment. This court has previously

recognized the "laudable purpose and goal to be achieved by the physician-patient privilege." *Miller* at 140. Because the privilege protects confidentiality, patients feel comfortable fully disclosing their symptoms and conditions to their physicians without fear that those matters will later become public; thus, the privilege enables appropriate and complete treatment. *Id.* at 139-140. This court has also previously posited that the privilege is of arguably heightened importance in the context of mental health. *In re Miller*, 63 Ohio St.3d 99, 108, 585 N.E.2d 396 (1992). A psychiatrist's ability to help a patient depends completely upon the patient's willingness to talk freely. *Jaffee v. Redmond*, 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Unlike treatment for physical ailments, which can often proceed successfully based on a physical examination and the results of diagnostic tests, effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Id.*

{¶ 18} Although this court has acknowledged that the physician-patient privilege serves important policy goals, it is not the court's role to create law based on public policy; the General Assembly is the final arbiter of public policy in Ohio. *State v. Smorgala*, 50 Ohio St.3d 222, 223, 553 N.E.2d 672 (1990), *superseded by statute on other grounds as stated in State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 54. This court may not use any policy preferences it may have to override valid legislative enactments. *Id.* (rejecting the argument that this court had authority to override valid law because public interest in effective prosecution of drunk-driving cases outweighed policy considerations underlying physician-patient privilege).

{¶ 19} By carving out a number of exceptions, the General Assembly has made clear that the physician-patient privilege is not absolute. *Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, at ¶ 22. Here, we are concerned with

R.C. 2317.02(B)(1)(a), which states that the privilege does not apply and that a physician may be compelled to testify

> [i]n any civil action [and] in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action * * *
>
> > * * *
>
> (iii) [i]f a medical claim, dental claim, chiropractic claim, or optometric claim, * * * an action for wrongful death, *any other type of civil action*, or a claim under Chapter 4123. of the Revised Code *is filed by the patient* * * *.

(Emphasis added.) If the patient files "any type of civil action," the patient's physician may testify, and may be compelled to do so. *Leopold v. Ace Doran Hauling & Rigging Co.*, 136 Ohio St.3d 257, 2013-Ohio-3107, 994 N.E.2d 431, paragraph two of the syllabus.

{¶ 20} The filing of a civil action that triggers application of R.C. 2317.02(B)(1)(a)(iii) does not mean that every communication between the patient and his or her physician is subject to disclosure; triggering the statutory exception is not the end of the analysis. R.C. 2317.02(B)(1)(a) states that physician testimony may be had only "in accordance with the discovery provisions of the Rules of Civil Procedure," which include the requirement of relevance, *see* Civ.R. 26(B)(1). And when R.C. 2317.02(B)(1)(a)(iii) applies, "a physician may testify or be compelled to do so only as to a communication that related causally or historically to physical or mental injuries relevant" in the civil action filed by the patient. *Leopold* at paragraph three of the syllabus; *see also* R.C. 2317.02(B)(3)(a). Thus, the reach of the exception is limited, so as to minimize the amount of information unprotected.

{¶ 21} Many appellate courts in Ohio have held that when there is a dispute over whether a physician's testimony or records are causally or historically related to issues in the pending action, as R.C. 2317.02(B)(3)(a) requires, the trial court should conduct an in camera inspection or review to resolve the dispute. *Sweet v. Sweet*, 11th Dist. Ashtabula No. 2004-A-0062, 2005-Ohio-7060, ¶ 13, citing *Neftzer v. Neftzer*, 140 Ohio App.3d 618, 622, 748 N.E.2d 608 (12th Dist.2000); *Trangle v. Rojas*, 150 Ohio App.3d 549, 2002-Ohio-6510, 782 N.E.2d 617 (8th Dist.), ¶ 35; *Nester v. Lima Mem. Hosp.*, 139 Ohio App.3d 883, 887, 745 N.E.2d 1153 (3d Dist.2000); *Weierman v. Mardis*, 101 Ohio App.3d 774, 776, 656 N.E.2d 734 (1st Dist.1994). That procedure is consistent with this court's treatment of similar issues under other privilege statutes. *See, e.g., Peyko v. Frederick*, 25 Ohio St.3d 164, 495 N.E.2d 918 (1986), paragraph two of the syllabus (requiring in camera inspection to determine which portions of insurer's claim file are subject to attorney-client privilege).

### Standard of review

{¶ 22} Appellate courts generally review a discovery dispute under an abuse-of-discretion standard, but if the dispute involves an alleged privilege, it is a question of law, subject to de novo review. *Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. *See also Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 29 (reviewing de novo whether exception to physician-patient privilege applied to otherwise confidential medical information).

### Divorce is a civil action for purposes of R.C. 2317.02(B)(1)(a)(iii)

{¶ 23} The first question we must answer in determining the applicability of R.C. 2317.02(B)(1)(a)(iii) is whether Belinda—the patient—filed a civil action when she filed for divorce.

{¶ 24} This court has implicitly answered that question. *See Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153.

The issue in *Hageman* was whether an attorney may be liable for the unauthorized disclosure to a third party of an opposing party's medical information obtained through litigation. *Id.* at ¶ 1. The defendant-attorney obtained Hageman's medical records from Hageman's psychiatrist while representing Hageman's former wife in divorce proceedings. While the court was divided on whether the attorney's subsequent release of Hageman's records was actionable, the court did not question that Hageman had waived the physician-patient privilege, for purposes of the underlying divorce action, by filing a counterclaim for child custody. *Id.* at ¶ 14 (plurality), ¶ 25 (Cupp, J., concurring in syllabus and judgment), and ¶ 33 (O'Donnell, J., dissenting).

{¶ 25} Ohio appellate courts that have considered whether the filing of a domestic-relations claim can trigger the R.C 2317.02(B)(1)(a)(iii) exception to the physician-patient privilege have, at least implicitly, likewise answered that question in the affirmative. *See, e.g., McGregor v. McGregor*, 2d Dist. Clark No. 2011-CA-88, 2012-Ohio-3389, ¶ 16-17 (not applying R.C. 2317.02(B)(1)(a)(iii) in visitation-modification action, but only because the court could not determine whether records were physician-generated); *In re Kelleher*, 7th Dist. Jefferson Nos. 08-JE-31, 08-JE-32, 08-JE-33, and 08-JE-34, 2009-Ohio-2960, ¶ 18; *Gill v. Gill*, 8th Dist. Cuyahoga No. 81463, 2003-Ohio-180, ¶ 18-19; *Boling v. Valecko*, 9th Dist. Summit No. 20464, 2002 WL 185182 (Feb. 6, 2002), *6; *Schill v. Schill*, 11th Dist. Geauga No. 2002-G-2465, 2004-Ohio-5114, ¶ 46-47; *Neftzer*, 140 Ohio App.3d at 622, 748 N.E.2d 608 (12th Dist.).

{¶ 26} Belinda does not contest that she triggered the R.C. 2317.02(B)(1)(a)(iii) exception to the physician-patient privilege by filing a civil action; instead, she argues that in this case, her mental-health records are not causally or historically related to the issues of child custody or spousal support. We address that argument below, but for now, we conclude that a divorce proceeding is a civil action for purposes of R.C 2317.02(B)(1)(a)(iii). *See* 1970 Staff Note,

Civ.R. 75 (although divorce, annulment, and alimony actions seek relief different from that normally sought in civil actions, "they are still 'civil actions' ").

**A party's physical and mental health are relevant to issues of child custody and spousal support**

{¶ 27} When a patient files a civil action, "the elements of the exception contained in R.C. 2317.02(B)(1)(a)(iii) are satisfied, with the result that the testimonial privilege does not apply and a physician may testify or may be compelled to testify to the communications." *Leopold*, 136 Ohio St.3d 257, 2013-Ohio-3107, 994 N.E.2d 431, at ¶ 14. Because Belinda filed a "civil action" for divorce, her physicians and psychologists may be compelled to testify, but only as to communications that are "related causally or historically to physical or mental injuries relevant" in the divorce action. *Id.* at paragraph three of the syllabus.

{¶ 28} At issue in the divorce proceeding here was custody of Belinda and Keith's minor children, as well as Belinda's request for spousal support. The General Assembly has made consideration of the parties' physical and mental health not only relevant but mandatory in determining both child custody and spousal support. When allocating parental rights and responsibilities, a trial court must take into account the best interests of the children, R.C. 3109.04(B)(1), and in doing so, it must consider "all relevant factors, including * * * (e) [t]he mental and physical health of all persons involved," R.C. 3109.04(F)(1). R.C. 3105.18(C)(1)(c) similarly requires a court to consider the parties' "physical, mental, and emotional conditions" when determining whether spousal support is appropriate and reasonable.

{¶ 29} Belinda acknowledges the importance of a party's physical and mental health as factors in determining questions of custody and spousal support, as well as the statutory requirement that the trial court consider those factors. She nevertheless argues that her medical records are not relevant to those issues because Keith has not asserted that she has any physical or mental condition that would

inhibit either her ability to parent or her ability to work. The court of appeals rejected that argument because the trial court's duty to consider Belinda's mental health in determining the issues of child custody and spousal support did not depend on whether Keith expressly raised a challenge based on her mental health. Nothing in either R.C. 3109.04(B) or 3105.18(C) limits a court's consideration to those factors expressly challenged by the parties to the action. A party seeking custodial authority over a child " 'subjects him or herself to extensive investigation of all factors relevant to the permanent custody award.' " *Schill*, 11th Dist. Geauga No. 2002-G-2465, 2004-Ohio-5114, at ¶ 47, quoting *Gill*, 8th Dist. Cuyahoga No. 81463, 2003-Ohio-180, at ¶ 18. The same rationale applies when spousal support is at issue.

{¶ 30} Ohio appellate courts have generally aligned with the Eleventh District's holding in this case and hold that a parent's request for custody of his or her children puts the parent's health at issue, so as to except the parent's medical information from the physician-patient privilege. *See Gill* at ¶ 18; *Boling*, 9th Dist. Summit No. 20464, 2002 WL 185182, at *6 ("Because Boling's mental state was a factor that the trial court was required to consider [in the custody dispute], the mental health assessments were causally related"); *Whiteman v. Whiteman*, 12th Dist. Butler No. CA94-12-229, 1995 WL 375848, at *3 (June 26, 1995) ("in seeking custody of the children when he filed a complaint for divorce, appellant made his mental condition an element to be considered by the court in awarding him custody"). We agree with those courts.

{¶ 31} In support of her argument that her medical records are not causally or historically related to the questions of custody and spousal support in this divorce action, Belinda focuses on the Eleventh District's decision in *Sweet*, 11th Dist. Ashtabula No. 2004-A-0062, 2005-Ohio-7060, and the Twelfth District's decision in *Neftzer*, 140 Ohio App.3d 618, 748 N.E.2d 608. Those cases, however, involved a different issue from the issue before this court; they dealt with whether the trial

courts erred in failing to conduct an in camera inspection. *Sweet* at ¶ 6; *Neftzer* at 621-623. In *Sweet*, the court stated that by seeking custody of her children, the mother waived the physician-patient privilege only in regard to her ability to parent her children. *Id.* at ¶ 10-11. And in *Neftzer*, the court stated that the mother made her mental and physical conditions elements to be considered by seeking custody of the parties' children and that she waived the physician-patient privilege as to those communications that relate causally or historically to conditions relevant to custody issues. *Neftzer* at 622-623. But those statements were simply acknowledgements of the limitation placed on physician testimony by R.C. 2317.02(B)(3)(a). In both cases, the courts of appeals held that the trial court erred by ordering the release of the patient's medical records without first conducting an in camera inspection of the medical information to determine whether the information was causally or historically related to issues in the case. *Sweet* at ¶ 16-17; *Neftzer* at 622-623.

{¶ 32} Contrary to Belinda's assertion, the Eleventh District's decision here is not inconsistent with its holding in *Sweet*. Rather, the trial court did exactly what the Eleventh District said in *Sweet* that it should do. Faced with a dispute over whether Belinda's medical records are causally or historically related to the issues in the case, the magistrate reviewed the documents in camera to make that determination.

{¶ 33} Belinda also points to *Weaver v. Weaver*, 5th Dist. Licking No. 2003CA00096, 2004-Ohio-4212, in which the court rejected the argument that a father waived the testimonial privilege that covered his communications with a mental-health counselor or social worker simply by seeking custody of his children. But the testimonial privilege at issue in *Weaver* was R.C. 2317.02(G)(1), not R.C. 2317.02(B). The R.C. 2317.02(G)(1) privilege, which applies to certain counselors and social workers, has its own set of statutory exceptions. But none of those exceptions mirrors the provision at issue here, R.C. 2317.02(B)(1)(a)(iii), which

12

expressly provides that the patient waives the physician-patient privilege in civil actions filed by the patient. Accordingly, the Fifth District's holding in *Weaver* that there was no indication that "any of the exceptions under R.C. 2317.02(G) applied," *id.* at ¶ 72, does not support Belinda's argument against application of R.C. 2317.02(B)(1)(a)(iii) here.

{¶ 34} Belinda's reliance on *Smith v. Chatwood*, 2d Dist. Clark No. 2618, 1990 WL 119270 (Aug. 15, 1990), a child-custody case, fares no better. In *Smith*, a father challenged the trial court's exclusion from evidence of a psychological report concerning his child's mother. He argued that the trial court's mandatory consideration of the child's best interests superseded the mother's claim of privilege and that the mother had waived her privilege because the psychological report had been compiled at the request of her attorney. In rejecting the father's arguments, the court of appeals stated, "One does not waive the [physician-patient] privilege merely by filing a law suit." *Id.* at *5, citing *State ex rel. Floyd v. Montgomery Cty. Court of Common Pleas*, 55 Ohio St.2d 27, 377 N.E.2d 794 (1978), and *State ex rel. Lamdin v. Brenton*, 21 Ohio St.2d 21, 254 N.E.2d 681 (1970). Both *Floyd* and *Lamdin*, however, were decided prior to the enactment of the exception now found in R.C. 2317.02(B)(1)(a)(iii), *see* Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1692 (effective Jan. 5, 1988). In *Lamdin*, this court, in fact, acknowledged that the General Assembly *could* enact a law regarding waiver of the physician-patient privilege upon the filing of a civil action, but, the court stated, "until such time as it is so adopted, a personal injury litigant does not waive the physician-patient privilege merely by filing his petition." *Id.* at 24. Years later, the General Assembly did just that—it created the statutory exception at issue in this case.

{¶ 35} Because the General Assembly has required trial courts to consider the mental and physical health of the parties when determining claims for child custody and spousal support, communications between those parties and their physicians regarding their mental and physical health will often be causally or

historically related to the issues in domestic-relations cases in which those claims are raised. That relationship does not depend on whether the party seeking the release of medical information has specifically challenged the patient's parenting ability or earning potential based on health considerations. When there is a dispute regarding the relationship of specific communications or other records to the issues of custody or spousal support, trial courts should continue to use in camera review to resolve those disputes and limit disclosure of physician communications pursuant to R.C. 2317.02(B)(3)(a).

**The record does not demonstrate that the trial court released documents found not relevant**

{¶ 36} In recognition of the R.C. 2317.02(B)(3)(a) limitation of physician testimony to communications that relate causally or historically to issues in the divorce proceeding, the trial court ordered that records responsive to Keith's subpoenas be submitted to the court for an in camera inspection to determine whether the records were related to issues of custody or spousal support. The court of appeals stated, "The lower court's judgment states that the magistrate 'determined the documents were relevant' before directing their disclosure to Keith's counsel. Belinda does not demonstrate otherwise." 2019-Ohio-325, ¶ 16.

{¶ 37} Belinda argues, consistently with the dissenting opinion from the court of appeals, that the trial court's order was contrary to the magistrate's determination in her October 16, 2017 order that only *some* of the records were relevant. Belinda superficially raised this argument in the court of appeals, but she has never specifically argued that some identifiable subset of Dr. Janicki's records are irrelevant. Rather, Belinda's consistent argument has been that the physician-patient privilege shields from discovery *all* of the submitted records and that *none* of those records is relevant to contested questions in the divorce proceeding.

{¶ 38} The magistrate's order, following her in camera inspection of Dr. Janicki's records, stated, "[T]here are documents that are relevant to these

14

proceedings." It is admittedly unclear from that order whether the magistrate also determined that there were documents that were *not* relevant to the proceedings. Even assuming, however, that the magistrate did find that not all of the submitted documents were relevant, there is simply nothing in the record to indicate that any documents the magistrate determined were not causally or historically related to the issues in this case were released.

### *Conclusion*

{¶ 39} Both the trial court and the court of appeals correctly applied the statutory provisions defining the physician-patient privilege in Ohio. Although communications between a physician and patient are generally privileged under R.C. 2317.02(B)(1), Belinda's filing of this divorce action, with claims for child custody and spousal support, triggered the R.C. 2317.02(B)(1)(a)(iii) exception to the privilege for communications that relate causally or historically to physical or mental injuries relevant to issues in the divorce action. By statute, Belinda's mental and physical conditions are mandatory considerations for the trial court's determination of her claims for both child custody and spousal support. *See* R.C. 3109.04(F)(1)(e) and 3105.18(C)(1)(c). And the trial court appropriately examined in camera the submitted mental-health records to determine their relevance before ordering their release, subject to a protective order.

{¶ 40} We affirm the judgment of the Eleventh District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and FISCHER, J., concur.

KENNEDY, J., concurs in judgment only.

DEWINE, J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

————————

**DEWINE, J., dissenting.**

{¶ 41} Because a majority of this court departs from the plain language of the statutory provisions regarding the physician-patient privilege, I respectfully dissent. The trial court ordered that Belinda Torres Friedenberg's mental-health records be turned over to her husband Keith Friedenberg simply because Belinda had asked for custody of their children and for spousal support in their divorce dispute. The statute establishing a privilege for physician-patient communications neither requires nor permits such a result.

{¶ 42} The General Assembly has put in place a framework under which doctor-patient communications are confidential unless a specified exception applies. The privilege is codified in R.C. 2317.02(B)(1), which directs that a physician shall not testify "concerning a communication made to the physician * * * by a patient in that relation" or about "advice of a physician * * * given to a patient." "Communication" is defined broadly to encompass

> acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician * * * to diagnose, treat, prescribe, or act for a patient. A "communication" may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis.

R.C. 2317.02(B)(5)(a).

{¶ 43} The expansive protections provided for health records under this section are limited by specific statutory exceptions.

{¶ 44} A subsection of the statute provides that the testimonial privilege concerning physician-patient communications and advice "does not apply" in civil

actions filed by the patient. R.C. 2317.02(B)(1)(a)(iii); *see Leopold v. Ace Doran Hauling & Rigging Co.*, 136 Ohio St.3d 257, 2013-Ohio-3107, 994 N.E.2d 431, paragraph two of the syllabus. But this exception is not nearly so broad as it first appears. Another subsection makes clear that even when the testimonial privilege does not apply, only certain information that is directly relevant may be disclosed. A physician "may be compelled to testify or to submit to discovery"

> only as to a communication made to the physician * * * by the patient in question in that relation, or the advice of the physician * * * given to the patient in question, *that related causally or historically to physical or mental injuries that are relevant to issues in the * * * civil action.*

(Emphasis added.) R.C. 2317.02(B)(3)(a). Thus, while the civil rules generally allow for the discovery of information that is relevant or reasonably calculated to lead to the discovery of relevant information, *see* Civ.R. 26(B)(1), the ability to obtain disclosure of physician-patient communications is much more limited.

{¶ 45} The privilege statute provides a straightforward framework for evaluating whether physician-patient information may be released. To be covered by the privilege, the information must fall under the broad headings of "communications" or "advice." *See* R.C. 2317.02(B)(1); R.C. 2317.02(B)(5)(a). Then, the statutory protection against disclosure of physician-patient communications is lifted only to the extent that the communication or advice at issue is (1) causally or historically related to a physical or mental injury and (2) the physical or mental injury is relevant to issues in the case. R.C. 2317.02(B)(3)(a). If the physical- or mental-health information does not satisfy both requirements, the statute does not permit disclosure.

**{¶ 46}** The lead opinion cites the statutory language at the outset but then fails to apply it. Instead, the opinion collapses the inquiry by considering whether the physician-patient communications sought "relate causally or historically to issues in the divorce proceeding," explaining that the trial court properly reviewed the records to ascertain whether they were "related to issues of custody or spousal support." Lead opinion at ¶ 36. Applying this newly concocted standard, the author concludes that there is nothing to indicate that the records released "were not causally or historically related to the issues in this case." Lead opinion at ¶ 38.

**{¶ 47}** But the question is not whether the records are related to the issues in the case; it's whether the records are related to *physical or mental injuries* that are relevant to issues in the case. *See* R.C. 2317.02(B)(3)(a). For example, if a patient has been diagnosed with heliophobia and is unable to leave his house or maintain employment, that may well constitute a mental injury that relates to an issue in a child-custody or spousal-support case and the patient's treatment records may be discoverable to the extent they satisfy the statutory requirements. But a patient's reflections to a psychologist about the difficulties of his marriage are almost certainly not causally or historically related to a physical or mental injury and would therefore not be subject to disclosure.

**{¶ 48}** The gap in the lead opinion's logic is evidenced by its conclusion that the physical and mental health of the parties are inevitably issues in every child-custody or spousal-support case. With respect to child-custody proceedings, the trial court is required to consider the best interest of the child, R.C. 3109.04(B)(1), and the General Assembly has provided a list of factors for the court to rely upon in reaching its best-interest determination, R.C. 3109.04(F)(1). The statute directs the trial court to "consider all *relevant* factors, including, but not limited to: * * * The mental and physical health of all persons involved in the situation." (Emphasis added.) R.C. 3109.04(F)(1)(e). Similarly, when allocating spousal support in a divorce action, the trial court is required to consider "the physical, mental, and

emotional conditions of the parties." R.C. 3105.18(C)(1)(c). In view of these factors, the lead opinion concludes that communications between parties and their physicians "will often be causally or historically related to the issues in domestic-relations cases." Lead opinion at ¶ 35. But this cursory analysis falls short of reflecting what the statute actually requires.

{¶ 49} Though a trial court is required to consider certain statutory factors, it does not follow that every factor listed is an *issue* in every case. *See* R.C. 2317.02(B)(3)(a) (the privilege is lifted only with respect to communications related to "physical or mental injuries that are relevant to *issues in* the * * * civil action"). The statute does not permit a court to order disclosure simply because something might conceivably relate to a statutory factor; the court first must determine that the discovery request is directed to an "injury" that relates to something that is actually an "issue" in the case—that is, something actually contested.

{¶ 50} For instance, in a custody proceeding, the trial court is required to consider whether either parent has been convicted of a criminal child-abuse offense, R.C. 3109.04(F)(1)(h), as well as whether either parent has established a residence outside of the state, R.C. 3109.04(F)(1)(j). If there is no indication that either parent has been convicted of such an offense or lives out of state, we would never say that these are "issues" in the case just because they are listed as factors for the court to consider. The same goes for the health of the parties.

{¶ 51} Contrary to the lead opinion's contention, then, parties to a divorce do not subject themselves to a fishing expedition through all of their physical- and mental-health records simply by seeking custody of their children or financial support from their spouse. The statutory exception is much more narrow: it requires the court to review the records to determine whether the communication in question is (1) related causally or historically to a physical or mental injury that is (2)

relevant to an issue in the case. R.C. 2317.02(B)(3)(a). If the communication fails in either respect, it may not be turned over.

{¶ 52} Here, the magistrate employed the proper procedure by conducting an in camera review of the records. But she plainly did not evaluate whether the communications were "related causally or historically to physical or mental injuries that are relevant to issues in" the case, R.C. 2317.02(B)(3)(a). Rather, the magistrate's express view of the law was that "both parties are entitled to the medical records of each other because they have placed their physical and mental conditions in issue by requesting custody." With that understanding, the magistrate concluded that "there are documents that are relevant to these proceedings" and permitted the release of the records pursuant to a protective order. Likewise, the trial court reviewed the magistrate's order and made the same error: the trial court concluded that the parties' mental and physical health are issues in every child-custody or spousal-support case and therefore any party who seeks custody or support has "waived" the statutory privilege.

{¶ 53} Under any reasonable reading of the trial-court orders, it is apparent that neither the magistrate nor the domestic-relations judge applied the statute when reviewing the records at issue here. Rather, they operated under the assumption that health records are always relevant in a custody or support proceeding and released Belinda's mental-health records on that basis.

{¶ 54} I would therefore reverse the judgment of the court of appeals and remand this case to the trial court. I would direct the trial court to inspect the records in camera and—applying the statute—release only those records in which the communication or advice is (1) causally or historically related to a physical or mental injury that is (2) relevant to the issues in this case. Further, I would direct the trial court to order the return and destruction of any nonqualifying records that were previously released.

{¶ 55} Because a majority of this court holds otherwise, I respectfully dissent.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

_____

Stafford Law Co., L.P.A., Joseph G. Stafford, and Nicole A. Cruz, for appellant.

Dworken & Bernstein Co., L.P.A., and Gary S. Okin, for appellee.

_____