[Cite as *State v. O'Neill*, 2025-Ohio-287.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-11-130 |
| and | : | O P I N I O N |
| | | 1/30/2025 |
| M.O., | : | |
| Appellant | : | |
| | : | |
| - vs - | : | |
| | : | |
| STEPHEN O'NEILL, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. CRB 2200974

Michael T. Gmoser, Butler County Prosecuting Attorney, for appellee, State of Ohio.

Ohio Crime Victim Justice Center, and Chloe A. Greenawalt, for appellant, M.O.

Christopher Pagan, for appellee, Stephen O'Neill.

**HENDRICKSON, P.J.**

{¶ 1} This is a second interlocutory appeal by a victim of crime pursuant to

Marsy's Law and involves a trial court's decision to release the victim's medical records

to defendant's counsel. M.O., the victim in this case, appeals the trial court's determination that the constitutional rights of the defendant, Stephen O'Neill, outweigh her statutory privilege in the medical records.

{¶ 2} O'Neill was charged with domestic violence after police were called to his home on December 14, 2022. The amended complaint alleged that O'Neill got into an argument with the victim over boxes on the dining room table and during the argument, O'Neill grabbed the victim, turned her forcefully away and released her, throwing her onto the floor and the victim was harmed as a result.

{¶ 3} Prior to this altercation, on the evening of September 1, 2022, O'Neill and the victim were involved in another incident to which police responded. According to a police report of that incident, O'Neill told the officers the victim was having a mental breakdown. Officers spoke with the victim, who stated she was scared of O'Neill because he was always yelling at her. She indicated she was not having a mental episode but agreed to go to the hospital at that time to speak with someone.

{¶ 4} As part of his defense in the incident now before us, O'Neill sought the victim's medical records related to the prior incident and issued subpoenas duces tecum to Liberty Township Emergency Services and Atrium Medical Center. These entities previously provided medical services to the victim. The victim filed a motion to quash the subpoenas. After a hearing, the trial court determined that the request was not unreasonable or oppressive and denied the victim's motion to quash the subpoena. The court ordered a limited review of the records by counsel.

{¶ 5} The victim appealed the trial court's decision. This court reversed the trial court's decision to release the medical records because the court had not followed the procedure set forth in R.C. 2930.071. *See State v. O'Neill*, 2024-Ohio-485 (12th Dist.) ("*O'Neill I*"). This provision requires a court which does not quash a subpoena to conduct

- 2 -

an in camera review of any records to which a claim of privilege was asserted. If the court determines the records are privileged, it must then balance the victim's rights and privileges against the constitutional rights of the defendant.

{¶ 6} On remand, the parties stipulated that the records were privileged. The court considered the balancing issue and determined that the defendant's rights outweighed the victim's rights. The victim now appeals the trial court's decision, raising the following two assignments of error for our review:

I. THE TRIAL COURT ERRED BY ORDERING THE RELEASE OF VICTIM-APPELLANT M.O.'S PRIVILEGED RECORDS WHERE NO APPLICABLE STATUTORY PRIVILEGE EXCEPTION EXISTS.

II. THE TRIAL COURT ERRED WHEN FINDING THAT DEFENDANT-APPELLEE'S CONSTITUTIONAL RIGHTS OUTWEIGHED VICTIM-APPELLANT'S RIGHTS AND PRIVILEGES WHEN IT CONDUCTED THE BALANCING TEST PURSUANT TO R.C. 2930.071(A)(4).

{¶ 7} As mentioned above, this interlocutory appeal was filed pursuant to Marsy's Law, an Ohio constitutional amendment that granted certain rights to crime victims. Among those rights, a victim is "to be treated with fairness and respect for the victim's safety, dignity and privacy[.]" Ohio Const., art. I, § 10a(A). If a trial court makes a decision that implicates a victim's rights, the victim may petition the court of appeals for review of the decision. Ohio Const., art. I, § 10a(B); R.C. 2930.19(A)(2)(b)(i).

{¶ 8} R.C. 2930.071 was enacted to implement Marsy's Law and provides a framework for a trial court to follow when reviewing a motion to quash a subpoena for the victim's records. *See O'Neill I* at ¶ 8. As relevant to this appeal, the statute provides that if the trial court does not quash such a subpoena, "the court shall conduct an in camera review of any records as to which a right of privilege has been asserted." R.C.

2930.071(A)(3). If the court determines any of the records "are privileged or constitutionally protected, the court shall balance the victim's rights and privileges against the constitutional rights of the defendant." R.C. 2930.071(A)(4).

### *Statutory Privilege*

{¶ 9} In her first assignment of error, the victim argues that her medical records are statutorily privileged and no exception to the privilege exists. She contends that the statutory provisions are plain and unambiguous: communications (which include medical records) between physicians and patients, counselors and patients, and psychologists and patients are privileged. She further argues that none of the exceptions enumerated in the Revised Code are applicable here so, therefore, the subpoenaed records cannot be released.

{¶ 10} R.C. 2317.02(B) and (G) and 4732.19 provide that medical, clinical counseling and psychotherapist records are privileged. Although these provisions list exceptions to the privilege, none of the exceptions in these statutes apply to this case. We agree with the parties that the records sought by O'Neill are privileged.

{¶ 11} On appeal, the victim argues a bright-line rule: the records are subject to absolute privilege and cannot be disclosed under any circumstance. However, R.C. 2930.071 specifically requires a trial court to determine if a victim's records are privileged, and then, if "any of the records are privileged or constitutionally protected, the court shall balance the victim's rights and privileges against the constitutional rights of the defendant." R.C. 2930.071(A)(4).[1] Because this statute specifically requires the court to weigh a victim's privileged information against a defendant's constitutional rights, the victim's statutory privilege is not absolute.

---

1. We recognize that the Ohio Legislature passed Am. H.B. 289 on December 11, 2024, which specifically repeals R.C. 2930.071. However, the repeal is not effective until March 20, 2025.

{¶ 12} We note that neither Ohio courts nor the United States Supreme Court have yet decided whether an absolute statutory privilege can be overcome by a criminal defendant's constitutional rights.[2] However, we recognize that the majority of state courts which have examined this issue have determined that there are situations in which a defendant is entitled to pretrial discovery of records that would otherwise be subject to an absolute privilege. See *Commonwealth v. Barroso*, 125 S.W. 554, 2003 Ky. Lexis 266 (2003); and *State v. Johnson*, 440 Md. 228, 245-246, 102 A.3d. 295 (2014) (both citing a majority of states that have decided a victim's privilege may be subordinate to a defendant's constitutional rights). As stated by the Minnesota Supreme Court, "even an unpierceable statutory privilege must yield to a defendant's constitutional rights if nondisclosure would violate those rights." *In re Hope Coalition*, 977 N.W.2d 651, 661, 2022 Minn. Lexis 267 (2022).

{¶ 13} Therefore, we find no merit to M.O.'s argument that the statutory privilege is an absolute bar to release of the records under any circumstances. Accordingly, the first assignment of error is overruled.

### *Balancing of Rights and Privileges*

{¶ 14} In her second assignment of error, M.O. argues that the trial court erred in balancing her privileges and rights against the defendant's rights.[3] As mentioned above, R.C. 2930.071 provides that when a court determines a victim's records are privileged or constitutionally protected, "the court shall balance the victim's rights and privileges against the constitutional rights of the defendant." R.C. 2930.071(A)(4). Having

---

2. The Ohio Supreme Court recently declined jurisdiction on this issue. The victim's proposition of law stated: "Absent a statutory exception, a trial court may not order production of privileged records, including production to the court for an in camera review." *See State v. Boyle*, 2023-Ohio-4640.

3. We find no merit to O'Neill's argument in his brief that the victim failed to raise the issue of the trial court's balancing of the respective rights and privileges.

determined that there are instances in which a victim's statutory and constitutional rights may yield to a defendant's constitutional rights, we must now determine the parameter of those circumstances.

{¶ 15} Discovery disputes are generally reviewed for an abuse of discretion, but if the dispute involves an alleged privilege, it is a question of law subject to de novo review. *Friedenberg v. Friedenberg*, 2020-Ohio-3345, ¶ 22. In this case, the privilege question has already been determined—the victim has a statutory privilege. Therefore, we find that our review of the trial court's application of the balancing test is subject to an abuse of discretion review. *See State v. Counts*, 2022-Ohio-3666, ¶ 17 (8th Dist.); *State v. Kelley*, 2024-Ohio-157, ¶31-32 (8th Dist.).

{¶ 16} The trial court's decision indicates the defendant's stated reasons that his rights outweigh the victim's rights include (1) a right to impeach the victim based on mental health issues that may reflect on credibility, (2) the records may aid in explaining defendant's actions three months later and show his state of mind, (3) and that the records may aid in the defense because defendant would not have to waive his right to remain silent. The trial court further found that the defendant argued that the records may be used as evidence of causation of injuries and whether defendant caused the injuries.

{¶ 17} The trial court concluded that "in weighing the totality of [d]efendant's articulated need" against the victim's right to privilege, the defendant's constitutional right to a fair and impartial trial, in which he is able to form defenses to the allegations, outweighed the victim's need for privilege in the records. The court based its determination on the fact that the two incidents were similar in nature, close in time, and involved the same parties and alike allegations. The court recognized that the victim still has a right to keep her medical records protected as much as possible and therefore set limits on the discovery of the records as protection for the victim.

{¶ 18} The statute at issue instructs courts to balance the victim's rights and privileges against the constitutional rights of the defendant, but does not provide any further guidance regarding the balancing test. Because no Ohio courts have specifically addressed the nature of the balancing test under R.C. 2930.071, we look to cases involving balancing of discovery rights in cases from Ohio, the United States Supreme Court, and other state courts for guidance on the parameters of this balancing test.

{¶ 19} In Ohio, the Eighth District considered a case in which the defendant requested an inspection of the victims' home. *Counts*, 2022-Ohio-3666. The Eighth District indicated that the issue involved was the manner in which a court should weigh a defendant's rights against the victims' statutory rights under Marsy's Law to refuse discovery and their Fourth Amendment privacy rights. The court considered the framework to be applied in balancing rights and discussed the trial court's failure to reference the specific rights it was considering along with the nature of those rights. *Id.* at ¶ 40. Ultimately, the Eighth District determined that the trial court had erred because it focused, not on a balancing of competing rights between the victims and the defendant, but on the potential effect a grant or denial of the request would have on them. *Id.* at ¶ 40-42. The Eighth District concluded that a defendant must show that granting a request was necessary to preserve his rights and why he would be deprived of a fair trial.

{¶ 20} In another case, the Eighth District considered a defendant's post-conviction appeal regarding the denial of his request for the victim's mental health records. *Kelley*, 2024-Ohio-157. The court examined a previous case, noting the balancing of competing interests that must take place—the due process rights of the accused versus the victim's privacy rights—and determined that the trial court did not err in denying the defendant's discovery request because the defendant failed to establish that the records contained material or exculpatory evidence. *Id.*

{¶ 21} The United States Supreme Court considered a case involving release of privileged information from a children services agency in pretrial discovery. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). The Court considered the nature of the defendant's asserted constitutional rights in detail, including the nature of a criminal defendant's rights under the Confrontation Clause, the Sixth Amendment guarantee of compulsory process, and the nature of a defendant's due process rights. *Id*. at 51-58. The court also considered the state's compelling interest in protecting child abuse information. *Id*. at 57. The Court concluded that the defendant had a due process interest in determining whether the records contained exculpatory evidence and ordered an in camera review of the records for this purpose. *Id*. at 58. The Court clarified that the in camera review did not include access to the records by defense counsel and that counsel has no constitutional right to search the records for relevant evidence. *Id.* at 59-60. To do so, the Court found, would unnecessarily sacrifice the compelling interest in protecting the records. *Id*.

{¶ 22} Cases from other states give further guidance on the method in which a court should conduct a balancing of rights between a victim and a defendant in pretrial discovery disputes. The Arizona Supreme Court examined the nature of the defendant's due process argument for the victim's privileged records against the scope of the victim's rights under the state constitution and statutory privacy in medical records. The court conducted a detailed analysis of the nature and scope of the rights in its balancing analysis. *Crime Victims R.S. v. Thompson*, 251 Ariz. 111, 485 P.3d 1068 (2021). In a later case, the Arizona Supreme Court again examined the precise nature of the rights to be balanced and explained that the weighing of competing interests requires a showing of materiality of constitutional dimension, as distinguished from evidence that is merely relevant to the defense. *Draper v. Gentry*, 255 Ariz. 417, 532 P.3d 1153.

{¶ 23} In weighing the state's interest in privilege against a defendant's constitutional rights, the Minnesota Supreme Court considered the nature and scope of the rights asserted in determining that the defendant's constitutional right to confront witnesses and to present a complete defense did not outweigh the interest in the privileged records. *In re Hope Coalition*, 977 N.W.2d at 661. In making its determination, the court considered the fact that the records were held by a non-governmental agency and subject to a privilege that expressly prohibited disclosure. *Id.* at 662. The court also considered that the privilege did not prevent the defendant from cross-examining the victim or other state witnesses at trial, but only blocked access to certain records in pretrial discovery. *Id. See also State v. Ramirez*, 985 N.W.2d 581, 2023 Minn. App. Lexis 25 (Minn. App. 2023).

### *Nature of Victim's Rights and Privileges*

{¶ 24} Our review of these cases and others compels us to find that the balancing test in R.C. 2930.071(A)(4) should include an in-depth consideration of the nature and extent of the competing privileges and rights and that a court should consider whether disclosure of the records is necessary to preserve a defendant's rights. Turning to the facts of this case, we first consider the nature of the rights and privileges asserted by the victim.

#### *Victim's Constitutional Rights*

{¶ 25} We begin by examining the victim's constitutional rights. In Ohio, crime victims have been specifically granted certain constitutional rights under Marsy's Law. As amended, Ohio's Bill of Rights grants crime victims "justice and due process throughout the criminal and juvenile justice systems." Ohio Const., art. I, § 10a(A). Marsy's Law requires victims "to be treated with fairness and respect for the victim's safety, dignity and privacy." Ohio Const., art. I, § 10a(A)(1).

{¶ 26} As relevant to this case, Article 1, Section 10a(A)(6) of the Ohio Constitution grants a crime victim the right to refuse a discovery request of an accused. However, this refusal only applies "except as authorized by section 10 of Article I of this constitution," which sets forth the state constitutional rights of an accused. Therefore, a victim's rights under Section 10a(A)(6) are not absolute. *State ex rel. Thomas v. McGinty*, 2020-Ohio-5452, ¶ 28. Marsy's Law further provides that the victim's rights are to be "protected in a manner no less vigorous than the rights afforded to the accused." Ohio Const., art. I, § 10a(A).

### *Victim's Statutory Rights*

{¶ 27} We next examine the nature of the statutory right asserted in this case, the privileged nature of medical records. We recognize a strong interest in the statutory privilege as it provides for absolute privilege under the facts of this case, as none of the limited statutory exemptions for disclosure apply. *Compare Ritchie*, 480 U.S. 39 (1987) (court considered fact that statute involved qualified privilege because an exception allowed disclosure) *with In re Hope Coalition*, 977 N.W.2d 651 (strict statutory privilege subject only to narrow exceptions not relevant in case).

{¶ 28} We further recognize that the victim has a compelling interest in the physician-patient privilege. The Ohio Supreme Court has recognized the importance of this privilege because it serves important policy goals. *Friedenberg*, 2020-Ohio-3345 at ¶ 18. Because the privilege protects confidentiality, "patients feel comfortable fully disclosing their symptoms and conditions . . . without fear that those matters will later become public." *Id*. at ¶ 17. Likewise, the court has recognized the importance of this confidentiality in mental health instances as treatment often "'depends on an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears.'" *Id*., quoting *Jaffee v. Redmond*, 518

U.S. 1, 10 (1996).

### *Defendant's Constitutional Rights*

{¶ 29} We now turn to consideration of the defendant's constitutional rights. The defendant argued to the trial court that the records may be relevant to establish his mental state of recklessness at the time of the offense; to impeach the victim, as issues involving her mental health reflect on credibility; and to prove serious physical harm, as any harm from that event is relevant. He further argued that a protective order could balance the interests involved. Defendant argued that this case involves his rights to confrontation, compulsory process, and to present a defense. The trial court found that the defendant's right to a fair and impartial trial and to form defenses to the allegations against him were implicated.

#### *Confrontation Clause*

{¶ 30} We begin with examination of the Confrontation Clause, which provides a defendant the right to physically face witnesses and the right to cross-examine witnesses against him. *Ritchie*, 480 U.S. 39, 51. The right to cross-examine witnesses includes the opportunity to show a witness is biased, or the testimony is exaggerated or unbelievable. *Id.* at 51. However, the United States Supreme Court has rejected a broad interpretation that a privilege is outweighed whenever a defendant asserts that he needs information that might be used at trial to impeach a witness or undermine testimony. *Id.* at 52.

{¶ 31} The right to cross-examine witnesses is a trial right, and the "ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id. at* 53. "[T]he Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.*, quoting *Delaware* v. *Fensterer*, 474

- 11 -

U.S. 15, at 20 (Emphasis in original.). "The Confrontation Clause is not a pretrial discovery device." *State v. Wickline*, 50 Ohio St.3d 114, 118 (1990), citing *Ritchie*; *State v. Ruggles*, 2020-Ohio-2886 (12th Dist.).

### Fair Trial and Due Process

{¶ 32} A criminal defendant has a right to a fair trial under the Sixth Amendment and due process rights under the Fourteenth Amendment. *State v. Montgomery*, 2022-Ohio-2211, ¶ 7-8. However, a criminal defendant does not have a general constitutional right to pretrial discovery. *State v. Widmer*, 2013-Ohio-62, ¶ 31; *Counts*, 2022-Ohio-3666 at ¶ 24.

{¶ 33} In the context of discovery, due process requires the prosecution to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *Ritchie* at 57. This rule applies to impeachment evidence. *United States v. Bagley*, 473 U.S. 667 (1985); *State v. Glover*, 2016-Ohio-2833, ¶ 33 (8th Dist.). As discussed above, courts considering the issue of due process with regard to pretrial discovery requests have determined that a defendant's due process may be implicated when the evidence is material to the defense. *See also Barroso*, 125 S.W. at 558.

{¶ 34} Evidence is material only if there is a reasonable probability that the result of the trial would have been different if the evidence had been disclosed to the defense. *State v. LaMar*, 2002-Ohio-2128, ¶ 27; *Ritchie* at 57. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph five of the syllabus. The "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976). Stated differently,

"undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial." *State v. Brown*, 2007-Ohio-4837, ¶ 49.

## *Our Analysis*

{¶ 35} With the nature and parameter of these constitutional and statutory rights in mind, we turn to the facts of this case. As mentioned, the trial court stated O'Neill's arguments for disclosure were that the records were necessary for impeachment, they may aid in showing the defendant's state of mind at the time of the charged incident, may show causation of the injuries and whether they were self-inflicted, and may be relevant to determining whether O'Neill caused serious physical harm.

{¶ 36} We understand the difficulty the trial court faced in deciding this complex issue with no guidance from the statute or Ohio case law. However, we find, under the facts of this case, the defendant's constitutional rights are not of sufficient magnitude to outweigh the victim's statutory and constitutional rights. The trial court's decision focuses not on the nature and extent of the competing rights between the defendant and the victim, but instead on the potential effect the grant or denial of access would have on the defendant. *See Counts*, 2022-Ohio-3666 at ¶ 38. The issue is not one of "need" for the records, or whether the records would be helpful to the defense. *See Barroso* 125 S.W. at 558. As discussed above, both the Supreme Court and the Ohio Supreme Court have rejected a standard of materiality that focuses on the possibility that undisclosed evidence "may help" the defendant prepare for trial.

{¶ 37} Instead, the focus of the balancing inquiry must be whether the nature of the defendant's rights is of such constitutional magnitude that the defendant's rights outweigh those of the victim. The trial court reviewed the records in camera, but nothing in the trial court's analysis indicates the records are material to O'Neill's guilt or

punishment or indicates that the result at trial would be different without the records.[4] Instead, the trial court's decision focuses on the manner in which the records may aid the defense.

{¶ 38} However, the denial of access to the records in this case does not limit the defendant's ability to cross-examine the victim or to present evidence about the previous incident. *See In re Hope Coalition*; *Ramirez*. While it is possible the records themselves may be helpful, the victim's medical records are not the sole source of information about the previous incident available to the defendant. The defense can cross-examine the victim about the incident, including her mental health at the time, without her medical records. In addition, the defense has the ability to call witnesses and present evidence at trial regarding the prior incident from other sources, including the police report, responding police officers, or 911 operator. Although O'Neill argues that the records are relevant to his state of mind at the time of the charged incident, O'Neill's previous experience, not the records themselves, were the basis of his state of mind at the time.

{¶ 39} In addition, O'Neill can also testify himself regarding the prior incident and his state of mind at the time of the charged incident. The court considered the fact that the records would aid in explaining the defendant's actions and show his state of mind, without the need to waive his right to silence. However, the decision whether to testify is a tactical and strategic one that is made by counsel and the defendant. *See Ruggles*, 2020-Ohio-2886 at ¶ 73. Nothing in our review of this issue compels us to find that a defendant has a constitutional right to evidence that would be helpful to him in exercising his right not to testify.

{¶ 40} Finally, although O'Neill argues that the prior records may help in

---

4. Likewise, this court has reviewed the records in camera.

determining whether serious physical harm occurred and the source of the victim's injury, we find no indication that an injury was involved in the first incident or that the records are relevant to the source and nature of the charged incident three months later.

{¶ 41} Accordingly, we find the trial court abused its discretion in ordering release of the victim's medical records. The victim's second assignment of error is sustained and the trial court's judgment is reversed and the cause remanded for further proceedings.

M. POWELL AND BYRNE, JJ., concur.